UNITED STATES of America

v.

Michael Irvin CANON et al.

No. CR 75–H–423–S.

United States District Court,

N. D. Alabama, S. D.

Oct. 28, 1975.

842

Wayman G. Sherrer, U. S. Atty., Ala., J. Stephen Salter, James C. Thomason, III, Asst. U. S. Attys., Ala., Birmingham, Ala., for plaintiff.

Richard C. Duell, III, Birmingham, Ala., and Herbert Shafer, Atlanta, Ga., for Michael Irvin Canon, John N. Jones, Bobby A. Culpepper, John Thomas Morgan, Frank Davis Callahan and Bobby Lee Callahan.

Earl W. Hall, Birmingham, Ala., Douglas G. Crosby and Oscar Goodman, Las Vegas, Nev., for William Ellington Baxter, Jr., Benjamin Juan Cheek, Walter Richard Schaffer and H. Jordon Rabstein.

Ferris S. Ritchey, Jr., Birmingham, Ala., for Sam Anselmo Fiorella and Icer R. Romeo, Robert Edward Evans and William Louis Walton.

L. Drew Redden, Birmingham, for Edward F. Vieau.

Ted Taylor, Prattville, Ala., for Thomas Frank Gober.

Cecil C. Jackson, Jr., Stanley B. Sikes, Selma, Ala., for Henry Mordecai Whetstone.

George Stuart, III, Birmingham, Ala., for Sam Bernard Barr.

Merritt Rogers, Birmingham, Ala., for Herman Carlisle, Sr.

William B. McCollough, Birmingham, Ala., for Nathan E. Smith, Jr.

Wesley M. Garrison, Bimingham, Ala., for Jody Daniel Hubbard and James Alford Anderson.

ORDER

HANCOCK, District Judge.

On September 4, 1975, a duly constituted grand jury in this district returned an indictment against 22 separate individuals, all of whom were charged therein with violations of 18 U. S.C. § 371 and 18 U.S.C. § 1955, and 8 of whom were additionally charged therein with violations of 18 U.S.C. § 1952(a)(3). The indictment was docketed in this court as styled above.

Apparently a significant portion of the evidence collected for presentation to the grand jury and/or for use in connection with a trial was obtained from, directly or indirectly, the interception of wire communications under the procedure authorized by 18 U.S.C. § 2516, et seq. The interceptions were made under orders of this court entered by Judge Sam C. Pointer, Jr., on November 6, 1974, and November 22, 1974. Each of those orders was the product of an *ex parte* proceeding before Judge Pointer on the particular day that the order was executed.

All defendants named in the indictment other than defendant Sam Bernard Barr have filed written motions challenging the two proceedings authorizing the interceptions and seeking to suppress all intercepted communications and any evidence traced in any manner therefrom. Counsel for defendant Barr filed no such motion in reliance upon a representation by United States Magistrate Edwin L. Nelson that the motions to suppress filed on behalf of the other defendants would be considered as raising the same objections on behalf of defendant Barr and the court will so consider them without the necessity of a formal motion to suppress being filed.

Pursuant to the procedure established in an order entered on September 18, 1975, the motions to suppress came on

for hearing before Honorable Edwin L. Nelson, United States Magistrate, on October 6, 1975. The hearing was concluded during the afternoon of October 9, 1975, and the court reporter filed herein on October 14, 1975, the entire transcript of such four-day hearing, consisting of over 1,000 pages, which transcript was delivered to Judge Nelson. On the same date a separate copy of the transcript was delivered to the undersigned for consideration and use prior to the completion by the United States Magistrate of his assigned task under the September 18, 1975 order, as amended October 15, 1975.

Under the October 15, 1975 amendment to the September 18, 1975 order, the United States Magistrate was requested to file proposed findings of fact and conclusions of law by October 20, 1975. This court, however, *prior* to its review of the proposed findings of fact and conclusions of law so delivered to it, read the entire transcript of the record developed before the Magistrate on October 6, 7, 8 and 9 and reviewed the documents pertaining to the November 6, 1974, and November 22, 1974 proceedings before Judge Pointer which have been under seal and continuously in the custody of Judge Pointer, the Clerk of this court or the undersigned, copies of such documents being incorporated herein as Exhibit A (November 6, 1974) and as Exhibit B (November 22, 1974).

Based upon the court's own independent review as aforesaid, the court has reached the conclusions hereinafter expressed. Moreover, following a careful review of the thorough and excellent report of the Magistrate on October 20, 1975, of his proposed findings of fact and conclusions of law, the court is of the opinion that its conclusions thus reached are in no way contrary to the conclusions reached by the Magistrate. Indeed, the proposed findings and conclusions of the Magistrate support and underscore those of the court reached herein.

The court is of the opinion and hereby finds (a) that the communications intercepted on November 6, 1974, through November 19, 1974, both dates inclusive, pursuant to the order entered by Judge Sam C. Pointer, Jr. on November 6, 1974, and the communications intercepted on November 23, 1974, through November 30, 1974, both dates inclusive, pursuant to the order entered by Judge Sam C. Pointer, Jr. on November 22, 1974, were lawfully intercepted; (b) that the order of authorization of Judge Sam C. Pointer, Jr. entered on November 6, 1974, and the order of authorization of Judge Sam C. Pointer, Jr. entered on November 22, 1974, and the respective verified applications and affidavits and exhibits underlying each such order are lawful and sufficient on their face; and, (c) that the interceptions described in (a) above were made in conformity with the respective orders of authorization under which they were made, namely, the November 6, 1974, and the November 22, 1974 orders. The court is of the opinion and hereby further finds that the separate utilization of pen registers in conjunction with the above described interceptions were lawfully authorized by separate orders entered on November 6, 1974, and on November 22, 1974, by Judge Sam C. Pointer, Jr., after a showing of sufficient probable cause. See *United States v. Doolittle*, 507 F.2d 1368, aff'd *en banc* 518 F.2d 500 (5th Cir. 1975).

The court is of the further opinion and hereby finds (a) that the verified application of the United States Attorney for the Northern District of Alabama presented to Judge Sam C. Pointer, Jr. on November 6, 1974, together with the supporting documents referred to therein, including specifically the detailed affidavit of Special Agent Robert M. Barrett dated November 6, 1974, as well as the verified application of the United States Attorney for the Northern District of Alabama presented to Judge Sam C. Pointer, Jr., on November 22, 1974, together with the supporting docu-

ments referred to therein, including specifically the detailed affidavit of Special Agent William K. Teigen, dated November 22, 1974, amply support the findings of Judge Pointer in his November 6, 1974, and November 22, 1974 orders, including the two separate pen register authorizations entered on the same dates, and (b) that throughout the entire 1,062 pages of transcript of the hearing on the motions to suppress no significant evidence was presented from which this court could conclude that any material statements contained in either of the verified applications or supporting documents or underlying affidavits are erroneous or false or that any material information then known to be true and correct which could have in any manner affected Judge Pointer's findings was omitted or withheld from the applications, supporting documents or affidavits.

■ The court specifically finds that the underlying documents presented to Judge Pointer support his findings of probable cause in subparagraph (a) of each of the two orders, namely, the November 6, 1974 order and the November 22, 1974 order. The only significant challenge to such underlying documents, and thus to Judge Pointer's findings of probable cause, sought to be developed during the suppression hearing center around the failure to name defendant Michael Irvin Canon in the November 6, 1974 application. Defendants labor hard the fact that the Federal Bureau of Investigation in general, and United States District Attorney Wayman G. Sherrer and Special Agent Robert M. Barrett in particular, knew that Michael Irvin Canon was heavily involved in bookmaking in Northern Alabama for a number of years prior to November 6, 1974. Defendants argue that this fact, coupled with information connecting telephone calls from persons named in the November 6, 1974 application to the residence telephones of the deceased father of Michael Irvin Canon, mandate the inclusion of Michael Irvin Canon in the November

6, 1974 authorization. The evidence presented during the suppression hearing does not support this challenge. The court can find no significant basis for concluding that *prior* to November 6, 1974, the Federal Bureau of Investigation, the Criminal Division of the Department of Justice, United States District Attorney Wayman G. Sherrer or Special Agent Robert M. Barrett possessed sufficient reliable evidence to connect Michael Irvin Canon himself with the Beasley-Abram gambling business, or for concluding that such November 6, 1974 proceedings are illegal or insufficient. See *United States v. Kahn*, 415 U.S. 143, 94 S.Ct. 977, 39 L.Ed.2d 297 (1974). However, were the court to conclude that Michael Irvin Canon was not then unknown so that he should have been specifically named in the November 6, 1974 application, the court is of the further opinion that such failure to name him does not invalidate the proceedings but simply would have presented a basis for the said Michael Irvin Canon to object to the introduction of evidence during the course of a trial against him which evidence was intercepted as a result of the November 6, 1974 proceedings had he been able to show during the suppression hearing prejudice from his not being so named. No such prejudice was shown. After challenging the November 6, 1974 proceedings for the failure to name Michael Irvin Canon because of claimed then existing substantial knowledge of his gambling involvement at that time with the Beasley-Abram gambling business, defendants next reverse their position and challenge the finding of probable cause by Judge Pointer in the November 22, 1974 order on the theory that such probable cause finding cannot be supported without information obtained in the November 6, 1974 intercept, and they assert that since the November 6, 1974 intercept was bad, the fruits of the November 22, 1974 intercept are simply tainted fruits of the poisonous tree. Defendants thus find themselves in the paradoxical situation of challenging the

November 6, 1974 proceedings on the basis of too much existing knowledge about Michael Irvin Canon to omit naming him therein and challenging the November 22, 1974 proceedings on the basis that the only existing knowledge about Michael Irvin Canon sufficient to include him therein was obtained during the November 6, 1974 intercept. The court cannot concur with either position. As indicated earlier, the court is of the opinion that a great deal was known about the general involvement of Michael Irvin Canon prior to the November 6, 1974 intercept but such information did not sufficiently tie him to the other persons named therein to compel his being added to the application. But if the court were mistaken in this, the only result would be, as stated before, the exclusion as evidence against Michael Irvin Canon of interceptions obtained as a result of the November 6, 1974 order, for the November 22, 1974 application and affidavit reflect much of the same information as set forth in the November 6, 1974 application and affidavit, plus specific and substantial additional information which was not obtained directly or indirectly from the claimed poisonous tree, the November 6, 1974 through November 19, 1974 intercept, and which is more than sufficient to support Judge Pointer's finding of probable cause on November 22, 1974, without reference to any intercepted telephone conversations prior thereto. See *United States v. Kilgore*, 518 F.2d 496 (5th Cir. 1975). Moreover, should the court conclude otherwise, the court is of the further opinion that consideration of information obtained by the November 6, 1974 through November 19, 1974 intercept would not invalidate the November 22, 1974 proceedings but would simply be a basis upon which Michael Irvin Canon could object to the introduction of evidence obtained from the November 22, 1974 intercept at his trial, had prejudice been established.

The court further specifically finds that the underlying documents presented to Judge Pointer support his findings of probable cause in subparagraph (b) of each of the two orders, namely, the November 6, 1974 order and the November 22, 1974 order. The several motions to suppress do not seriously challenge this aspect of either order and the suppression hearing did not concern itself with these findings.

██ The court further specifically finds that the underlying documents presented to Judge Pointer support his finding in subparagraph (c) of each of the two orders, namely, the November 6, 1974 order and the November 22, 1974 order to the effect that normal investigative procedures either had been tried without success and reasonably appear unlikely to succeed if continued, or reasonably appear unlikely to succeed if tried. A significant portion of the suppression hearing was devoted to a challenge of the veracity of the statements and the validity of the opinions contained in the underlying affidavits upon which Judge Pointer relied for such finding. The movants particularly challenge the propriety of Judge Pointer relying upon the opinions of the affiants to the effect that normal investigative procedures reasonably appear unlikely to succeed if tried. But Judge Pointer was entitled to, and doubtless did rely upon such opinions, just as any finder of fact is entitled to rely upon opinions of persons who by reason of education and experience have become experts in a particular profession or calling. The supporting affidavits each demonstrate that the affiant is well qualified to express such an opinion to the finder of fact. Moreover, Judge Pointer, like any other finder of fact, was not limited simply to the statements and opinions contained in the affidavits, but on the contrary he was permitted to draw, from facts established therein, such reasonable inferences as seemed justified to him in the light of his own experience. During his oral testimony at the suppression hearing, Judge Pointer discussed a prior experience he had had in the failure of

conventional investigative procedures when applied to an investigation of gambling activities. One of the principal methods used by the defendants at the suppression hearing to challenge the veracity of the affiants' statements and opinions was through the use of the oral testimony of witnesses that Judge Pointer did not hear on November 6, 1974 or November 22, 1974. But this court has the benefit of such oral testimony and still is of the opinion that the finding of Judge Pointer is correct. Certainly, as to the likelihood of success of surveillance, the opinion of the affiants who have substantial experience in investigating organized gambling activities is entitled to as much, if not more weight than the opinion of a private investigator, such as Thomas D. Waddell, who specializes in personal injury investigation. Moreover, another of the witnesses, Martin Joseph Diamotta, called by the defendants to endeavor to demonstrate that normal investigative procedures can be successful in ferreting out gambling activities, amply demonstrated that two other normal investigative procedures do not work. Mr. Diamotta was once a federally paid informer or cooperating insider, and he demonstrated, by his own behavior in that instance, how unreliable, untrustworthy and generally unacceptable the use of such a technique in gambling activities might be in view of his furnishing incorrect data and thereafter capitulating to the very ones (including one of the defendants herein) he had been paid by the Internal Revenue Service to investigate. Another normal investigative technique that movants urge could have been tried was cooperation with local police officials. Once again Mr. Diamotta demonstrated how risky such a technique might be and how the use thereof in an investigation of a high level bookmaking operation might spook the entire investigation. Mr. Diamotta testified that, within the very inner sanctum of the bookmaking operation included in this case, where many of the significant transactions took place openly, two members of the local police force employed by that bookmaking operation were always present. One needs little imagination to confirm an opinion that discussions with local police reasonably appear unlikely to succeed, if tried. Of course, Judge Pointer did not have the benefit of Mr. Diamotta's experience, but this court expressly finds that he did have the benefit of the substantial experience of the two affiants and that their opinions, together with the specific facts contained in the affidavits, provide a solid foundation for Judge Pointer's finding that normal investigative procedures reasonably appear unlikely to succeed, if tried. Another argument movants make in challenging such finding rests upon the erroneous assumption that if normal investigative procedures could be successfully utilized to obtain the barest of evidence to establish probable cause and thereby obtain an indictment, this would preclude the utilization of the extraordinary procedure of telecommunication intercept. Quite the reverse is true. The provisions of 18 U.S.C. § 2510 et seq., clearly demonstrate that Congress intended to authorize the use of the extraordinary procedure of telecommunication intercept to obtain sufficient hard evidence to obtain a conviction. Indeed, normal investigative procedures were required to produce probable cause before such an intercept was authorized. And to assist in the major objective of combating organized crime, Congress was providing an additional tool to overcome "defects in the evidence gathering process." This intent is emphasized in Senate Report No. 1097 accompanying the Omnibus Crime Control and Safe Streets Act of 1968, 1968 U.S.Code Congressional and Administrative News, page 2112 et seq., particularly at pages 2157–2163. Moreover, the defendants' argument that the government had sufficient hard evidence to convict most, if not all, of those named in the November 22, 1974 application prior thereto is not a basis to strike down that intercept order. It is obvious that the November 22, 1974 application was sought to reach

others then believed to be involved and to gather evidence reflecting the interstate activities of those known and unknown who were involved with the Beasley-Abram-Canon gambling activities. A person gains no immunity from government investigation of his and other persons' further involvement in criminal activity simply because the government already has sufficient evidence to convict him of one crime. This court is of the firm opinion that underlying affidavits presented to Judge Pointer contain ample evidence to support his conclusion that normal investigative procedures reasonably appear unlikely to succeed if tried and that there is nothing in the record of the suppression hearing upon which this court can conclude that the information available to Judge Pointer in the affidavits was incorrect, unreliable, false or misleading. The court is of the opinion that the verified applications and affidavits upon which Judge Pointer relied in this regard pass the practical and common sense test. *United States v. Robertson*, 504 F.2d 289 (5th Cir. 1974). And, as has been noted by other courts, passing this test is not a great burden. *United States v. Askins*, 351 F.Supp. 408 (D.Md.1972).

The court further specifically finds that the underlying documents presented to Judge Pointer support his finding of probable cause in subparagraph (d) of each of the two orders, namely, the November 6, 1974 order and the November 22, 1974 order. No serious challenge is raised by movants to this finding of probable cause except to the extent that it could be argued the failure to name Michael Irvin Canon in the November 6, 1974 proceeding likewise invalidates this finding. The court's treatment of that argument in discussing the challenge directed to Judge Pointer's finding of probable cause in subparagraph (a) of the two orders is sufficient to dispose of any such challenge here.

■ Another ground of the several motions to suppress centers around what defendants assert is a failure of the United States Attorney for the Northern District of Alabama to comply with the last paragraph contained in both the November 6, 1974 order and the November 22, 1974 order. That paragraph required the United States Attorney to provide or to cause to be provided to the court a report on the 5th and 10th days following the date of the respective order showing what progress had been made toward achievement of the authorized objective and the need for continued interception. Such a paragraph is expressly permitted, though not required, by 18 U.S.C. § 2518(6). In connection with each order, the United States Attorney received a written letter almost daily from the Federal Bureau of Investigation reflecting the progress then being made toward achievement of the authorized objective and these letters, contained in Exhibit A and Exhibit B to this order, were delivered almost daily to Judge Pointer. The court is of the opinion and hereby finds that such letters more than adequately complied with the last paragraph of each of the two orders involved. Moreover, were there to have been a failure to comply with such paragraph, the court is of the further opinion that the defendants could not successfully challenge the legality of the proceedings before Judge Pointer or the utilization at a trial of the communications intercepted as a result thereof in the absence of a showing of express prejudice. The suppression hearing is totally void of any hint or inference of prejudice to any defendant as a result of the supplying of, or failure to supply reports to Judge Pointer as directed in his orders.

■■ Another ground of the several motions to suppress is predicated upon an alleged failure to comply with 18 U. S.C. § 2518(8)(d). In this regard the court observes that prior to the expiration of the original 90-day period this court, responding to an *ex parte* motion on February 27, 1975, entered an order duly extending that period for an additional period of 90 days. The parties

have filed herein on October 10, 1975, a stipulation which reflects that 9 of the defendants were served with the inventory during the original 90-day period, 7 of the defendants were served with the inventory during the extended 90-day period and 2 of the defendants were never served with the inventory for the obvious reason that there was no interception of their voices. As to these 18 defendants, the court finds that the United States has complied with the provisions of 18 U.S.C. § 2518(8)(d). The stipulation also reflects that 4 defendants were served with the inventory after the extended 90-day period had expired. They are defendants Cheek, Schaffer, Fiorella and Bobby Lee Callahan. As to defendant Bobby Lee Callahan, the stipulation reflects that his voice has not been identified and apparently he was simply served a notice in the event that an unidentified voice on the tape was his own. With regard to defendant Fiorella, he was served the day after his voice was identified and the court finds that this satisfactorily complies with § 2518(8)(d). Obviously Congress did not intend to require service of an inventory on an unidentified person, and as to any unidentified person this court is of the opinion that no court order extending the time within which an inventory may be served is necessary. Of course, as to any voice identified after the 90-day period (as extended) has expired, the inventory must be served within a reasonable time after such identification. Service on defendant Fiorella the day after his voice was identified is reasonable. As to defendant Schaffer, his voice was identified on July 3, 1975, and he received his inventory on August 18, 1975. And as to defendant Cheek, his voice was identified on April 28, 1975, and he was served with an inventory on July 18, 1975. The time interval between identification and service as to these defendants served after the extended 90-day period had expired may be sufficient for them to object to the introduction into evidence at trial of any of their communications if they can es-

tablish that they were prejudiced by the delay and if they did not cause or contribute to the delay, such as by making it difficult to be located during that period after a reasonable effort to do so. In any event, the court hereby finds that the provisions of 18 U.S.C. § 2518(8)(d) have been satisfied as to all defendants other than defendant Cheek and defendant Schaffer. As to all defendants, including defendant Cheek and defendant Schaffer, the motion to suppress predicated on this ground will be overruled without prejudice to those two defendants to endeavor to establish prejudice to them from the delay and without prejudice to the United States to endeavor to establish justifiable reasons for the delay.

■ Another ground of the several motions to suppress is the fact that persons other than law enforcement officials were permitted to listen to portions of the intercepted oral communications. The facts underlying this ground are set forth in paragraphs 2 and 3 of the stipulation of the parties filed October 10, 1975. That stipulation reflects that under the direction of the F.B.I. agent leading the investigation, the duplicate original of the conversations recorded during the interceptions authorized November 22, 1974, was made into composite cassettes of the voices appearing to be the same person. These cassettes were transmitted to resident agents of the F.B.I. in Huntsville, Clanton and Birmingham, Alabama; in Augusta and Columbus, Georgia; and in Las Vegas, Nevada; for the purpose of playing them to persons believed by such lead agent to be in a position to identify the voices thereon. Thereafter F.B.I. agents in such cities caused these cassettes to be played to the following categories of persons: F.B.I. agents, police officers, confidential informers and several citzens who are not defendants. In so doing, the court hereby finds that the agent who directed this investigation was appropriately using the contents of the intercepted telecommunications in

the proper, performance of his official duties and that this activity is expressly authorized by 18 U.S.C. § 2517(2). Intercepted communications are of course of very little value unless the persons engaged in the communication are identified. In order to identify the voices and to establish their identity in a court of law, it is necessary to develop witnesses who are familiar with the intercepted voices and who are available to testify as to such identity. Congress expressly had this in mind in enacting 18 U.S.C. § 2517(2). While this congressional intent is manifest in the statute itself, there can be little doubt of such intent after a review of Senate Report No. 1097 of the Omnibus Crime Control and Safe Streets Act of 1968, 1968 U.S. Code Congressional and Administrative News, page 2112, at page 2188. There, the Senate Committee expressly stated that such § 2517(2) "envisions use of the contents of intercepted communications . . . to develop witnesses."

■ Another ground of the several motions claims that the contents of the intercepted communications were not promptly taken to Judge Pointer in accordance with 18 U.S.C. § 2518(8)(a). This ground is not supported by the facts. The intercept was terminated in Birmingham, Alabama, on Saturday, November 30, 1974. The tapes were taken to Judge Pointer (who was holding court in Gadsden, Alabama) on Tuesday, December 3, 1974, although Judge Pointer did not sign the order sealing the tapes until December 7, 1974. The court finds that this satisfactorily complied with § 2518(8)(a).

As stated earlier herein, Honorable Edwin L. Nelson, United States Magistrate, filed herein on October 20, 1975, a very thorough and excellent report. This carefully documented report sets forth his findings of fact and conclusions of law with regard to the issues raised by the several motions to suppress, viewed in the light of the suppression hearing over which he presided on October 6, 7, 8 and 9, 1975. His re-

port concludes with the recommendation that this court deny the several consolidated motions to suppress.

Only defendants Edward F. Vieau, Thomas Frank Gober, Jr., Henry Mordecai Whetstone, William Ellington Baxter, Jr., Benjamin Juan Cheek, Walter Richard Schaffer, H. Jordon Rabstein, Robert Edward Evans, Sam Anselmo Fiorella, Icer R. Romeo and William Louis Walton filed with this court a writing challenging such report on or before the October 24, 1975, deadline established by the order of this court entered October 15, 1975. Such October 24, 1975 deadline was reemphasized to counsel for all defendants in open court on October 21, 1975, at the hearing on the several motions for a severance, the court explaining that it intended to review such contests on October 24, 25, 26 and 27 so that it could enter by October 27, 1975, its order ruling on the motions to suppress. The written contests filed as aforesaid have greatly assisted the court and the court has been particularly impressed with the effort evidenced by the attorneys representing defendants Edward F. Vieau, Thomas Frank Gober, Jr. and Henry Mordecai Whetstone in pursuing their clients' interests. The several written contests filed, however, do not address themselves to any matters which the court had not previously considered during its own review of the intercept proceedings, of the several grounds of the motions to suppress and of the evidence introduced during the suppression hearing.

Except where the findings of fact and conclusions of law contained in this order are expressly in conflict with any of the findings or conclusions contained in the Magistrate's report (and if any that are material to the opinions and conclusions herein do exist, this court has not been able to discern them), the court hereby adopts the findings of fact and conclusions of law contained in the report of the Magistrate filed herein on October 20, 1975, and attaches to this order as Exhibit C hereof a copy of such

report, exclusive of its exhibits. The court wants to thank Judge Nelson for the fine manner in which he presided over the suppression hearing, for the comprehensive and detailed report submitted by him, and for his general assistance in the court's consideration of the motions to suppress.

In summary, the court hereby finds and concludes:

1. The Honorable William B. Saxbe, Attorney General of the United States, authorized in writing on November 6, 1974, the application presented to Judge Pointer on November 6, 1974, for an order under 18 U.S.C. § 2518.

2. On January 28, 1974, by Order No. 559–74, acting under the authority of 28 U.S.C. §§ 509 and 510, 5 U.S.C. § 301 and 18 U.S.C. § 2516, the Honorable William B. Saxbe, Attorney General of the United States, specially designated the Assistant Attorney General in charge of the Tax Division to exercise the power conferred by 18 U.S.C. § 2516 to authorize applications to a federal judge of competent jurisdiction for orders authorizing the intercept of wire or oral communications.

3. Pursuant to the authority contained in Order No. 559–74 entered January 28, 1974, Honorable Scott P. Crampton, Assistant Attorney General, Tax Division, authorized in writing on November 22, 1974, the application presented to Judge Pointer on November 22, 1974, for an order under 18 U.S.C. § 2518.

4. The wire communications sought to be intercepted concerned offenses enumerated in 18 U.S.C. § 2516(1)(c).

5. Both the November 6, 1974 application and the November 22, 1974 application complied with the requirements of 18 U.S.C. § 2518(1). The prior knowledge of the gambling activities of Michael Irvin Canon prior to November 6, 1974, as well as the knowledge that a telephone listed in the name of his deceased father and located in the home of his deceased father which home was frequented by defendant Canon and other persons known to participate in gambling activities was insufficient specifically to connect defendant Canon himself with the Beasley-Abram gambling business which was the subject of the November 6, 1974 application, and consequently it was not necessary for that application to name defendant Canon.

6. Each of the applications was duly presented to Judge Pointer in an *ex parte* proceeding and upon consideration thereof Judge Pointer specifically made the findings required by 18 U.S.C. § 2518(3) before an order can be entered. The verified applications and attachments thereto, including specifically the detailed affidavits, were more than sufficient in each instance to support such findings. No evidence presented during the suppression hearing is sufficient to cast any significant cloud upon any of the information upon which Judge Pointer relied in reaching his findings and conclusions.

7. Both the November 6, 1974 order and the November 22, 1974 order complied with the provisions of 18 U.S.C. §§ 2518(4) and 2518(5).

8. The letter reports submitted to Judge Pointer almost daily satisfied the requirements contained in his orders and the provisions of 18 U.S.C. § 2518(6).

9. The contents of the wire communications intercepted pursuant to the two orders were duly recorded on tape and timely made available to Judge Pointer in accordance with 18 U.S.C. § 2518(8)(a).

10. Such tape recordings, as well as the applications and orders accompanying the November 6, 1974 and November 22, 1974 proceedings, were duly sealed in accordance with 18 U.S.C. §§ 2518(8)(a) and 2518(8)(b).

11. The provisions of 18 U.S.C. § 2518(8)(d) have been satisfied as more fully discussed herein.

12. The provisions of 18 U.S.C. § 2518(9) have been complied with as to each of the 22 defendants named herein.

13. The communications intercepted on November 6, 1974 through November 19, 1974, both dates inclusive, were lawfully intercepted.

14. The communications intercepted, on November 23, 1974 through November 30, 1974, both dates inclusive, were lawfully intercepted.

15. The order of authorization of Judge Pointer entered on November 6, 1974 and the order of authorization of Judge Pointer entered on November 22, 1974 and the respective verified applications and affidavits and exhibits underlying each such order are lawful and sufficient on their face.

16. The communications intercepted on November 6, 1974 through November 19, 1974, both dates inclusive, were made in conformity with the November 6, 1974 order of authorization.

17. The communications intercepted on November 23, 1974 through November 30, 1974, both dates inclusive, were made in conformity with the November 22, 1974 order of authorization.

18. The separate utilization of a pen register in conjunction with the interceptions authorized November 6, 1974 and November 22, 1974 was lawfully authorized by separate orders entered on November 6, 1974 and on November 22, 1974 by Judge Pointer after a showing of sufficient probable cause.

19. The disclosure by law enforcement officers to F.B.I. agents, police officers, confidential informers and several citizens who are not defendants of certain of the voices intercepted for the express purpose of identifying such voices and producing witnesses who could testify as to such identification is an appropriate use and expressly authorized by 18 U.S.C. § 2517(2).

20. Sufficient good cause exists for the disclosure of the factual information contained herein, including specifically the exhibits hereto and the information therein contained.

For the reasons expressed herein, all pending motions to suppress the intercepted communications and any evidence traced in any manner therefrom are overruled.