UNITED STATES of America, Plaintiff-Appellee,

v.

H. Jordan RABSTEIN and Michael Irvin Canon, Defendants-Appellants.

No. 75–4282.

United States Court of Appeals, Fifth Circuit.

June 17, 1977.

Rehearing and Rehearing En Banc Denied Aug. 10, 1977.

See also, D.C., 404 F.Supp. 841.

Oscar B. Goodman, Douglas G. Crosby, Las Vegas, Nev., for H. Jordan Rabstein.

Herbert Shafer, Atlanta, Ga., for Michael Canon.

Wayman G. Sherrer, U. S. Atty., James C. Thomason, III, Asst. U. S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before RIVES *, GEWIN and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Defendants H. Jordan Rabstein and Michael Irvin Canon appeal their conviction for violations of 18 U.S.C. §§ 2, 371, 1952, and 1955.[1] Defendants contend that FBI

---

* Judge Rives was a member of the panel that heard oral argument but due to illness did not participate in this decision. The case is being decided by a quorum. 28 U.S.C. § 46(d).

1. These statutes read as follows:

 § 2. *Principals*

 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

 (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

 § 371. *Conspiracy to commit offense or to defraud United States*

 If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

 If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

 § 1952. *Interstate and foreign travel or transportation in aid of racketeering enterprises*

 (a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

 (1) distribute the proceeds of any unlawful activity; or

 (2) commit any crime of violence to further any unlawful activity; or

 (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

 and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

 (b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act), or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, or (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States.

 (c) Investigations of violations under this section involving liquor shall be conducted under the supervision of the Secretary of the Treasury.

agents violated certain provisions of Title III of the Omnibus Crime Control Act in their use of electronic surveillance to investigate defendants' alleged gambling activities.

■■■ Defendants' primary contention is that the Government's failure to name defendant Canon in its November 6, 1974 application to intercept wire communications violated 18 U.S.C. § 2518(1)(b)(iv), which requires such an application to include "the identity of the person, if known, committing the offense and whose communications are to be intercepted," thereby requiring suppression of the intercepted conversations. Specifically, the application named six persons,[2] but omitted any reference to Canon, whose conversations, defendants argue, agents had probable cause to believe would be overheard in their surveillance. The recent United States Supreme Court holding in *United States v. Donovan*, 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977), forecloses this argument.[3] See also *United States v. Sklaroff*, 552 F.2d 1156 (5th Cir. 1977). Defendants also argue that the Government violated 18 U.S.C. § 2518(1)(c), which requires an affidavit supporting a wire interception to include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if

§ 1955. *Prohibition of illegal gambling businesses*

(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.

(b) As used in this section—

(1) 'illegal gambling business' means a gambling business which—

(i) is a violation of the law of a State or political subdivision in which it is conducted;

(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

(2) 'gambling' includes but is not limited to pool-selling, book-making, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.

(3) 'State' means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

(c) If five or more persons conduct, finance, manage, supervise, direct, or own all or part of a gambling business and such business operates for two or more successive days, then, for the purpose of obtaining warrants for arrests, interceptions, and other searches and seizures, probable cause that the business receives gross revenue in excess of $2,000 in any single day shall be deemed to have been established.

(d) Any property, including money, used in violation of the provisions of this section may be seized and forfeited to the United States. All provisions of law relating to the seizure, summary, and judicial forfeiture procedures, and condemnation of vessels, vehicles, merchandise, and baggage for violation of the customs laws; the disposition of such vessels, vehicles, merchandise, and baggage or the proceeds from such sale; the remission or mitigation of such forfeitures; and the compromise of claims and the award of compensation to informers in respect of such forfeitures shall apply to seizures and forfeitures incurred or alleged to have been incurred under the provisions of this section, insofar as applicable and not inconsistent with such provisions. Such duties as are imposed upon the collector of customs or any other person in respect to the seizure and forfeiture of vessels, vehicles, merchandise, and baggage under the customs laws shall be performed with respect to seizures and forfeitures of property used or intended for use in violation of this section by such officers, agents, or other persons as may be designated for that purpose by the Attorney General.

(e) This section shall not apply to any bingo game, lottery, or similar game of chance conducted by an organization exempt from tax under paragraph (3) of subsection (c) of section 501 of the Internal Revenue Code of 1954, as amended, if no part of the gross receipts derived from such activity inures to the benefit of any private shareholder, member, or employee of such organization except as compensation for actual expenses incurred by him in the conduct of such activity.

2. Kenneth Earl Beasley, Cecile Beasley, Arnold Abram, Edward Lee King, James Lamar Bearden, and Hubbard Bryant.

3. While *Donovan* left open the question whether a bad faith omission of a known person's name would require suppression, defendants have not proven bad faith. Therefore, we do not decide that question in this case.

tried or to be too dangerous." Yet, the affidavit in this case bears a close similarity to those approved in two recent Fifth Circuit cases and meets the guidelines articulated in those opinions. *See United States v. McCoy*, 539 F.2d 1050 (5th Cir. 1976); *United States v. Sklaroff,* 552 F.2d 1156 (5th Cir. 1977). *See also United States v. Robertson*, 504 F.2d 289 (5th Cir. 1974), *cert. denied*, 421 U.S. 913, 95 S.Ct. 1568, 43 L.Ed.2d 778.

 Defendant Canon also argues that agents, without prior judicial authorization, made duplicate tapes of the tap and played these to various persons for the purpose of obtaining voice identification. Yet 18 U.S.C. § 2518(8)(a) provides, among other things, that duplicate recordings may be made for use or disclosure pursuant to the provisions of subsections (1) and (2) of section 2517. Section 2517(2) provides that "any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire or oral communication or evidence derived therefrom may use such contents to the extent such use is appropriate to the proper performance of his official duties." The Government's conduct here complies with that provision. *See also* Senate Report, No. 1097 of the Omnibus Crime Control and Safe Street Act of 1968, 1968 U.S. Code Congressional and Administrative News, p. 2112.[4]

Finally, defendant Rabstein argues that the contents of the "Canon tap," authorized on November 22, 1974, should be suppressed for violating 18 U.S.C. § 2517(5). Section 2517(5) provides that an investigative officer may testify about criminal activities not specified in the wiretap authorization upon application to and approval by a judge of competent jurisdiction who has found that the contents were intercepted in accordance with the provisions of this chapter.[5] The wiretap order here authorized the interception of wire communications for the purpose of obtaining evidence reflecting conduct in violation of 18 U.S.C. § 1955 and § 371. Yet, the federal grand jury that heard the contents of the tap returned an indictment charging violations not only of § 1955 and § 371, but also of § 1952—an offense not mentioned in the interception order. Accordingly, appellants argue that because the indictment included an offense not listed in the interception authorization, the Government should have obtained court approval, pursuant to § 2517(5), to present evidence of the interception before the grand jury. Because the Government failed to do this, defendant Rabstein demands that the indictment be dismissed, citing *United States v. Brodson*, 528 F.2d 214 (7th Cir. 1975), a case in which the Seventh Circuit affirmed the district court's dismissal of an indictment in circumstances similar to this. *See also United States v.*

---

**4.** In considering that section, Congress stated:
 The proposed provision [§ 2517(2)] envisions use of the contents of intercepted communications, for example, to establish probable cause for arrest . . . to establish probable cause to search . . . or to develop witnesses.
1968 U. S. Code Congressional and Administrative News at p. 2188.

**5.** Section 2517(3) provides:
 Any person who has received, by any means authorized by this chapter, any information concerning a wire or oral communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof.

Section 2517(5) states:
 When an investigative or law enforcement officer, while engaged in intercepting wire or oral communications in the manner authorized herein, intercepts wire or oral communications relating to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in subsections (1) and (2) of this section. Such contents and any evidence derived therefrom may be used under subsection (3) of this section when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of this chapter. Such application shall be made as soon as practicable.

*Marion*, 535 F.2d 697 (2nd Cir. 1976). The Government's substantive rebuttal to this argument is multifaceted. First, the Government contends that it did not have to seek prior judicial authorization to disclose the intercepted communications to the grand jury since those communications provided evidence to indicate violations of the criminal offenses enumerated in the authorization for interception—§ 371 and § 1955. That these conversations also indicated violations of criminal statutes not mentioned in the order does not call into play § 2517(5), for § 2517(5) was enacted to insure that an interception order would not be used to permit a "fishing expedition" for criminal violations through its requirement of judicial authorization to testify about crimes not listed in the order. Here, where the interceptions produced evidence of just those offenses listed in the order, argues the Government, it is clear that no fishing expedition was engaged in, even though the conversations may have coincidentally demonstrated the existence of criminal offenses not enumerated in the authorization. This argument is especially persuasive, continues the Government, when the evidence for two offenses is as over-lapping as it must be in § 1952 and § 1955 violations. The Government also argues that, *Brodson* notwithstanding, dismissal of an indictment is not a remedy employed by Title III for violations of the disclosure provisions of §§ 2517(3) and (5), and that such a dismissal would contravene Supreme Court decisions in *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956) and in *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) that the validity of an indictment is not affected by the character of the evidence considered.

█ We do not have to decide, however, the difficult questions raised by the Government's above substantive rebuttal in that its procedural objection strikes the winning blow against defendant Rabstein's objections. That is, the Government observes that neither defendant raised this issue at any time below—either before or during trial and that accordingly defendant Rabstein waived any violation of 2517(3) and (5). Since defendant Rabstein did not deny this allegation in his appellate brief or at oral argument, we consider him to have conceded that he never raised the issue below. Fed.R.Crim.P., 12(b)(2) requires that any defense or objection based on defects in the indictment, must be raised prior to trial, unless the objection is that the indictment fails to show jurisdiction or to charge an offense. The latter two objections may be raised at any time during the pendency of the proceedings. Failure to make any other objection prior to trial, however, shall constitute their waiver. Rule 12(f). Here, defendants do not allege that violation of 2517(5) constituted lack of jurisdiction in the district court or resulted in the failure of the indictment to charge an offense. Accordingly, they have waived any other defects in the indictment and cannot at this time move to dismiss. *See United States v. Busard*, 524 F.2d 72 (5th Cir. 1975); *United States v. Varner*, 437 F.2d 1195 (5th Cir. 1971), *cert. denied*, 404 U.S. 825, 92 S.Ct. 52, 30 L.Ed.2d 52; *United States v. Williams*, 203 F.2d 572 (5th Cir. 1953). In addition, while defendants have not argued that the evidence of the § 1955 offense should have been suppressed at trial, we note that § 2518(10)(a)—the provision of Title III dealing with suppression of intercepted conversations—likewise emphasizes timeliness in its requirement that motions to suppress be made before trial unless there was no opportunity to make such motion or the defendant was not aware of the grounds of motion.[6] *See United States v. Moon*, 491 F.2d 1047 (5th Cir. 1974). For

---

**6.** It is questionable whether a motion to suppress is proper in this situation in that § 2518(10)(a) authorizes suppression only when (i) the communication was unlawfully intercepted, (ii) the order of authorization was insufficient on its face, or (iii) the interception

was not made in conformity with the authorization. Violation of the disclosure requirement in § 2517(3) does not seem to meet any of these prerequisites for a motion to suppress. *See United States v. Vento*, 533 F.2d 838 (3rd Cir. 1976).

the above reason, we reject defendant's belated effort to dismiss the indictment.

AFFIRMED.