**Gerald Hay KILGORE, Kristina Kilgore, a minor, through her parent and next friend Gerald Hay Kilgore, Nikki Kilgore, a minor, through her parent and next friend Gerald Hay Kilgore, Helen Kilgore and Samuel Diamond, Appellants,**

**v.**

**John MITCHELL, Individually and as Attorney General of the United States; Will Wilson, Individually and as Assistant Attorney General of the United States; Henry E. Petersen, Individually and as Deputy Assistant Attorney General of the United States; Harold Shapiro, Individually and as Deputy Assistant Attorney General of the United States; Vance Duffy, Individually and as Agent of the Federal Bureau of Investigation, Appellees.**

No. 78–2702.

United States Court of Appeals, Ninth Circuit.

Submitted May 8, 1980.

Decided July 22, 1980.

James Edward Green, Van Nuys, Cal., for appellants.

Volney Brown, Jr., Asst. U.S. Atty., Los Angeles, Cal., argued, for appellees; Dzintra I. Janavs, Asst. U.S. Atty., Los Angeles, Cal., on brief.

Before FARRIS and POOLE, Circuit Judges, and MacBRIDE,* District Judge.

POOLE, Circuit Judge:

Appellants Gerald Kilgore, members of his family and a family friend, sued under the Fourth Amendment and Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, for civil damages arising out of claimed illegal electronic surveillance by agents and officials of the Department of Justice of the United States. The surveillance in question was conducted pursuant to court order from October 1 to October 30, 1970, by means of wiretaps on phones located at Kilgore's home and at his business. Appellants appeal from the district court's grant of summary judgment in favor of defendants below. This Court's jurisdiction derives from 28 U.S.C. § 1291.

## BACKGROUND

Title III sets forth standards and procedures for the use of electronic surveillance. Law enforcement officers must receive authorization from the Attorney General or a specially designated Assistant Attorney General before applying to a United States District Court for a warrant. 18 U.S.C. § 2516. The application must demonstrate

---

* Honorable Thomas J. MacBride, Senior United States District Judge for the Eastern District of California, sitting by designation.

probable cause to believe a crime is being committed and must justify the use of a wiretap rather than other investigative techniques. 18 U.S.C. § 2518. The statute further requires that interception of "communications not otherwise subject to interception under this chapter" be minimized. 18 U.S.C. § 2518(5).

One whose communications are intercepted in violation of Title III may seek damages from persons involved in the illegal surveillance, but "[a] good faith reliance on a court order or legislative authorization shall constitute a complete defense to any civil or criminal action brought under this chapter or under any other law." 18 U.S.C. § 2520.

The only named target of the wiretapping was Kilgore, who conducted an extensive bookmaking operation, primarily from his place of business, JK Sports Journal. Law enforcement officers in California submitted a warrant application to the Justice Department for approval. After authorization from the Justice Department, the application and supporting materials were presented to the United States District Court. The affidavit in support of the application contained a lengthy description of the investigation of Kilgore to that point, including transcripts of two telephone calls involving Kilgore which had been intercepted by a wiretap in Georgia. On this information, the district judge issued an order which permitted wiretapping on Kilgore's phones from October 1 to October 15, 1970, and required submission of progress reports every fifth day. Before expiration of the fifteen days, the Justice Department authorized an application for extension. The district court ordered extension of the surveillance for an additional fifteen days and continuation of periodic reports. The surveillance terminated on October 30, 1970.

Wiretaps were placed on all phones at Kilgore's residence and business. The phones were monitored constantly; all conversations were intercepted and recorded, regardless of their contents or participants. Numerous innocent conversations involving each of the appellants were consequently intercepted.

The appellees in this case had roles in either authorizing or conducting the surveillance. Appellees Mitchell, Wilson, Petersen and Shapiro were officials in the Department of Justice responsible for processing and authorizing applications for wiretap warrants. Appellee Duffy was the FBI agent in charge of the Kilgore investigation who conducted the wiretapping.

*DISCUSSION*

For purposes of the summary judgment motion, the district court accepted as true appellants' allegations that the wiretaps violated the statute and the Fourth Amendment in several respects, but found that appellees had established a good faith defense as to each alleged violation. The court therefore entered judgment in their favor. The only issue before this Court is the correctness of the district court's conclusion regarding the good faith defense. For reasons discussed below, we affirm.

Officials charged with violation of Title III may invoke the defense of good faith under § 2520 if they can demonstrate: (1) that they had a subjective good faith belief that they were acting in compliance with the statute; and (2) that this belief was itself reasonable. *Jacobson v. Rose,* 592 F.2d 515, 523 (9th Cir. 1978), *cert. denied,* 442 U.S. 930, 99 S.Ct. 2861, 61 L.Ed.2d 298 (1979). If the requisites of the statutory good faith defense are met, then the standard for qualified immunity [1] as a defense to Fourth Amendment violations is also satisfied. *Id.; Zweibon v. Mitchell,* 516 F.2d 594, 671 (D.C. Cir. 1975), *cert. denied,*

---

1. At oral argument, appellees urged this Court to conclude that Mitchell, Wilson, Petersen and Shapiro were entitled to absolute immunity because they were performing prosecutorial functions. In other cases, courts have attempted to distinguish quasi-judicial or prosecutorial functions from investigative or administrative activ-

ities. E. g., *Jacobson v. Rose, supra; Forsyth v. Kleindienst,* 599 F.2d 1203 (3d Cir. 1979), *cert. pending,* 48 LW 3481 (1980). Due to the difficulty of making such a distinction and because we find qualified immunity established in this case, we decline the invitation to reach the issue of absolute immunity.

425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976); *Wright v. Florida*, 495 F.2d 1086, 1090 (5th Cir. 1974).

Appellants do not challenge appellees' subjective good faith belief that their actions complied with the statute, but argue rather, as to each alleged violation, that this belief was objectively unreasonable.

### 1. *Authorization Procedure.*

■ The statute requires that applications for court orders be authorized by the Attorney General or a specially designated Assistant Attorney General. 18 U.S.C. § 2516. Appellee Mitchell was Attorney General at the time of the wiretaps in question and all requests for authorization came to him. The actual authorization consisted of a letter to the requesting law enforcement officer over the signature of Wilson, who was the Assistant Attorney General in charge of the Criminal Division. Wilson did not see the applications involved here, however; his signature was affixed by his deputies, Petersen and Shapiro. Appellants contend that this procedure contravened the statute because Wilson had not been specially designated by Mitchell and because Wilson himself did not in fact approve the application.

The procedure followed in 1970 in this case appears to constitute a violation of Title III as later construed by the Supreme Court in *U. S. v. Giordano*, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), and *U. S. v. Chavez*, 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974). In 1970, however, appellees were proceeding without the benefit of judicial interpretation of the statute. Moreover, although appellees obviously did not rely on the decisions, two Courts of Appeals prior to *Giordano* and *Chavez* approved the procedure followed in this case. *U. S. v. Cox*, 462 F.2d 1293 (8th Cir. 1972), *cert. denied*, 417 U.S. 918, 94 S.Ct. 2623, 41 L.Ed.2d 223 (1974); *U. S. v. James*, 494 F.2d 1007 (D.C. Cir.), *cert. denied*, 419 U.S. 1020, 95 S.Ct. 495, 42 L.Ed.2d 294 (1974). The issue was therefore at least shrouded in some uncertainty. Appellees could reasonably have entertained their asserted belief

that the Justice Department's authorization procedure was in accordance with Title III. We conclude that a good faith defense has been established.

### 2. *Failure to Identify Other Suspects.*

An application for a wiretap must include "the identity of the person, if known, committing the offense and whose communications are to be intercepted." 18 U.S.C. § 2518(1)(b). The applications submitted to the authorizing court in this case demonstrated probable cause to believe that Kilgore was conducting a bookmaking operation, but failed to identify other persons who were suspected of criminal activity. The law is now settled that an application must name all persons who investigators have probable cause to believe are involved in the offense under investigation, but this issue was not resolved until seven years after the wiretaps in question. *U. S. v. Donovan*, 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977). The affidavit submitted by Duffy in support of the application did contain the names of all those persons who should have been mentioned under the rule in *Donovan*. The necessary information was thus presented to the authorizing court, although not in the appropriate format. We sustain the trial court's finding that appellees reasonably believed that the application fulfilled the requirements of the statute.

### 3. *Showing of Necessity.*

In order to justify the use of electronic surveillance, an application for a wiretap must include a full and complete statement as to why normal investigative techniques are insufficient to provide evidence of the crime. 18 U.S.C. § 2518(1)(c). In *U. S. v. Kalustian*, 529 F.2d 585 (9th Cir. 1976), this Court held that a supporting affidavit must not rely too heavily upon the general knowledge and experience of investigating agents, but must provide specifics concerning the particular investigation which is the subject of the application. Agent Duffy submitted to the court a forty-seven page affidavit describing the Kilgore investigation. Whether this affidavit supplied sufficient detail to satisfy the statutory require-

ment of necessity is open to debate, see *U. S. v. Martin*, 599 F.2d 880 (9th Cir. 1979), and *U. S. v. Baker*, 589 F.2d 1008 (9th Cir. 1979), but appellants' *belief* that the affidavit complied with the statute appears reasonable. The authorizing court was satisfied with the affidavit and issued a warrant on the basis of its contents. The court's approval provides additional support for appellees' belief in the sufficiency of the affidavit, and they have thus established a good faith defense on this issue.

### 4. *Reliance on Georgia Wiretap.*

Appellees question the validity of the application in this case because probable cause was based in part on information obtained from a wiretapping in Georgia which in 1975 was found to be defective with regard to Kilgore. However, the Fifth Circuit upheld the validity of the wiretap as to all others indicated. *U. S. v. Doolittle*, 507 F.2d 1368, *aff'd en banc*, 518 F.2d 500 (5th Cir. 1975), *cert. denied*, 430 U.S. 905, 97 S.Ct. 1172, 51 L.Ed.2d 580 (1977). Appellees cannot be faulted for failing to predict in 1970 that an otherwise legal wiretap application would be found invalid with respect to Kilgore. Their belief in the validity of the Georgia wiretap was objectively reasonable, satisfying the test for a good faith defense.

### 5. *Failure to Minimize.*

During the surveillance in question, all conversations were monitored, resulting in the interception of many innocent conversations involving neither criminal content nor participants suspected of criminal activity. Duffy had been instructed, pursuant to Justice Department policy at that time, that the statutory mandate of minimization in 18 U.S.C. § 2518(5) meant only refraining from interception of privileged communications and from monitoring calls from a public telephone except when a targeted person was speaking.

The Justice Department's interpretation subsequently proved to be erroneous. The Supreme Court has held that minimization means intercepting the least number of innocent conversations possible under the circumstances. *Scott v. U. S.*, 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978). However, the earliest published judicial holdings construing the minimization clause were issued after the wiretapping in this case, e. g., *United States v. King*, 335 F.Supp. 523 (S.D.Cal.1971), *modified*, 478 F.2d 494 (9th Cir. 1973), *cert. denied*, 417 U.S. 920, 94 S.Ct. 2628, 41 L.Ed.2d 226 (1974); *U. S. v. Leta*, 332 F.Supp. 1357 (M.D.Pa.1971), and the issue did not reach the Supreme Court until 1978.

Justice Department policy and the underlying statute itself were intended primarily to respond to the constitutional standards set forth in *Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967) and *Katz v. U. S.*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). See *U. S. v. Donovan, supra*, 429 U.S. at 426–27, 97 S.Ct. at 667. Appellants argue that appellees could not reasonably have believed that their interpretation of the minimization clause was appropriate, and that they must have known that interception of any innocent communication was to be minimized. The Court in *Berger* did express concern about the monitoring of innocent communications, but in the context of a recording device placed in an office for a period of two months. In such a situation, all persons coming into the area would be affected, without regard to their connection to the suspect or to the crime. The Supreme Court in *Katz* dealt with the expectation of privacy of those using a public telephone. The interception in the instant case was more limited, involving private telephones and only calls placed to or from the suspect's home or the business which he used as a front for bookmaking.

Furthermore, the overriding principle in both *Berger* and *Katz* was the necessity for judicial control over electronic surveillance and a neutral predetermination of the scope of the search. The wiretapping in this case, pursuant to the requirements of Title III, possessed such essential safeguards. Appellees were not unreasonable in believing that Justice Department policy complied with constitutional standards.

More importantly, this wiretapping was subject to continuing judicial supervision. Periodic reports submitted to the authoriz-

ing court included not only summaries of the interceptions, but also complete logs noting the contents of all conversations. The authorizing court was therefore on notice as to the innocent nature of many intercepted calls, but did not suggest that appellees alter the surveillance. In the absence of judicial authority to the contrary, the court's tacit approval of appellees' conduct of the surveillance, based as it was on Justice Department policy, justifies their good faith reliance on that policy.

In 1970 appellees were attempting to implement a new statute, one which lacked judicial clarification. The record contains no evidence that they sought intentionally to avoid compliance with the statute, only that they failed to interpret its requirements correctly. Absent any evidence of disregard for the safeguards of Title III, "to hold [appellees] personally liable for exercising [their] statutory responsibility to evaluate and act upon an uncertain area of the law would be nothing short of punitive." *Weinberg v. Mitchell*, 588 F.2d 275, 278 (9th Cir. 1978).

The district court correctly determined that the elements of a good faith defense were established. Accordingly, the judgment is affirmed.