599 A.2d 713

**Alfred R. BOETTGER**

v.

**Robert E. MIKLICH; Daniel Dunn, Commissioner of Pennsylvania State Police; Commonwealth of Pennsylvania.**

**Appeal of Robert MIKLICH and the Commonwealth of Pennsylvania.**

Commonwealth Court of Pennsylvania.

Argued April 2, 1991.

Decided Aug. 22, 1991.

Reargument Denied Oct. 4, 1991.

Petition for Allowance of Appeal Granted April 23, 1992.

138

Claudia M. Tesoro, Deputy Atty. Gen., for appellants.

E. Jerome Brose, for appellee.

Before SMITH and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

SMITH, Judge.

Robert E. Miklich and the Commonwealth of Pennsylvania (Appellants) appeal from the order of the Court of Common Pleas of Northampton County dated April 23, 1990 granting the motion of Alfred R. Boettger for judgment n.o.v., denying Appellants' post-verdict motions, and ordering a new trial to determine the amount of damages owed to Boettger. This appeal involves several issues of first impression for this Court arising under the Wiretapping and Electronic Surveillance Control Act (Act), 18 Pa.C.S.

§§ 5701–5781, and in particular Section 5725 of the Act which authorizes civil actions for unlawful disclosure of any wire, electronic, or oral communication. Because this Court finds that Appellants are afforded a good faith defense under Section 5725 of the Act, the trial court's order must be reversed.

On November 17, 1981, the Pennsylvania State Police obtained a wiretap permit from the Attorney General pursuant to Section 5704(2)(ii) of the Act [1] and thereafter intercepted telephone conversations between Boettger and Wayne Dickerson, an individual acting with the police and consenting to the interception. The intercepted conversations revealed Boettger's involvement with illegal gambling upon college football games. The State Police obtained a search warrant upon the information divulged in the conversations and searched Boettger's premises, finding among other things $32,124 in a safe. Boettger was subsequently charged with bookmaking, pool selling, and conspiracy, to which he eventually pled *nolo contendere*, and was thereafter convicted and sentenced to a fine.

1. At the time the permit was obtained, Section 5704(2)(ii) provided in relevant part:

**§ 5704. Exceptions to prohibition of interception and disclosure of communications**

It shall not be unlawful under this chapter for:

. . . .

(2) Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire or oral communication involving suspected criminal activities where:

. . . .

(ii) one of the parties to the communication has given prior consent to such interception. However, no interception under this paragraph shall be made unless the Attorney General or a deputy attorney general designated in writing by the Attorney General ... has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception; however such interception shall be subject to the recording and record keeping requirements of section 5714(a) (relating to recording of intercepted communications) and that the Attorney General [or] deputy attorney general ... authorizing the interception shall be the custodian of the recorded evidence obtained therefrom.

18 Pa.C.S. § 5704(2)(ii), *as amended.*

The intercepted telephone conversations were transcribed; and while Boettger's criminal proceedings were pending, the transcripts of the conversations were made available to agents of the Internal Revenue Service (IRS) and the Pennsylvania Department of Revenue (PDR) by Robert E. Miklich, the State Trooper who had intercepted the conversations. Based upon information contained in the transcripts, jeopardy tax assessments were filed against Boettger in the amount of $153,510, which amount was reduced substantially upon appeal. On October 17, 1983, Boettger brought this civil action against Miklich, the Commonwealth, and the Commissioner of the Pennsylvania State Police[2] pursuant to Section 5725 of the Act, alleging that the defendants, by disclosing the intercepted conversations to the IRS and PDR, violated the Act. Section 5725 provided at the time relevant to Boettger's suit:

**§ 5725. Civil action for unlawful interception, disclosure or use of wire or oral communication**

(a) **Cause of action.**—Any person whose wire or oral communication is intercepted, disclosed or used in violation of this chapter shall have a civil cause of action against any person who intercepts, discloses or uses or procures any other person to intercept, disclose or use, such communication; and shall be entitled to recover from any such person:

(1) Actual damages, but not less than liquidated damages computed at the rate of $100 a day for each day of violation, or $1000, whichever is higher.

(2) Punitive damages.

(3) A reasonable attorneys' fee and other litigation costs reasonably incurred.

(b) **Waiver of sovereign immunity.**—To the extent that the Commonwealth and any of its officers, officials or employees would be shielded from liability under this section by the doctrine of sovereign immunity, such immunity is hereby waived for the purposes of this section.

---

**2.** Boettger eventually dismissed the Commissioner as a defendant in the case.

(c) **Defense.**—It is a defense to an action brought pursuant to subsection (a) that the actor acted in good faith reliance on a court order or the provisions of this chapter.

18 Pa.C.S. § 5725, *as amended.*[3]

The trial court ruled as a matter of law that disclosure of the intercepted communications to the agents of the IRS and PDR violated the Act. The issue of Appellants' good faith defense, however, was submitted to the jury, which, after deliberation, determined that Miklich held a reasonable belief that the Act permitted the disclosures and therefore returned a verdict for Appellants. The trial court thereafter entered judgment n.o.v. for Boettger concluding that the court erred by submitting the issue of good faith to the jury because as a matter of law Miklich's misinterpretation of the Act—a mistake of law—could never serve as a good faith defense to the violation, citing several federal court decisions.

Appellants submit the following issues for this Court's consideration: (1) whether the trial court erred in concluding that a civil action under the Act carries a six-year statute of limitations; (2) whether the trial court erred in concluding that it is a violation of the Act for an officer to disclose the contents of a lawfully intercepted telephone conversation between an informant and another individual to state and federal tax investigators; (3) whether the trial court erred in concluding that the issue of good faith in this case was not an issue to be decided by the jury, assuming a violation of the Act had occurred; and (4) whether the trial court erred in concluding that the Commonwealth may be a party defendant to a civil action under Section 5725 of the Act.

I

■ Appellants first contend that the action against them must be time-barred as it was initiated more than one year

---

**3.** This section was amended in 1988 to authorize a civil action for the unlawful interception, disclosure, or use of electronic communications as well as wire and oral communications.

after Boettger knew or should have known that his intercepted conversations were disclosed to the IRS and PDR. There is no factual dispute that Boettger's cause of action was filed beyond this one-year time period. Although the Act does not set forth a statute of limitations period, Appellants argue that a one-year period applies for either of these two reasons: Boettger's claim is essentially an invasion of privacy claim or a statutory civil penalty claim, each of which carried a one-year statute of limitations at the time the action was filed.[4]

The trial court, however, correctly found the applicable limitations period to be six years pursuant to 42 Pa.C.S. § 5527, which provided in part at the time Boettger filed his action that "[a]ny civil action or proceeding which is neither subject to another limitation *specified in this subchapter* nor excluded from the application of a period of limitation by section 5531 (relating to no limitation)" must be commenced within six years. 42 Pa.C.S. § 5527(6), *as amended,* (emphasis added). Certain federal courts have applied a statute of limitations period for invasion of privacy claims to state wiretapping acts, reasoning that invasion of privacy is the most analogous cause of action. *See Newcomb v. Ingle,* 827 F.2d 675 (10th Cir.1987); *Awbrey v. Great Atlantic & Pacific Tea Co.,* 505 F.Supp. 604 (N.D.Ga.1980). It is clear, however, that in Pennsylvania an invasion of privacy claim is a distinct cause of action from that allowed under the Act. *See Marks v. Bell Telephone Co. of Pennsylvania,* 460 Pa. 73, 331 A.2d 424 (1975). Further, it is indisputable that the same or related facts may apply to more than one cause of action, and if one remedy is time-barred, a party may pursue his or her rights by means of the remedy which is not time-barred. *See, e.g., Hartranft's Estate,* 153 Pa. 530, 26 A. 104 (1893). Therefore, the limitations period specific for invasion of privacy claims is inapplicable to the separate civil cause of action arising under Section 5725 of the Act.

**4.** *See* 42 Pa.C.S. §§ 5523(1) and 5523(2), *as amended.* Actions upon a statute for a civil penalty or forfeiture now carry a two-year limitations period. 42 Pa.C.S. § 5524(5).

■ Moreover, it is further clear that Section 5725 of the Act does not provide for a civil penalty or forfeiture; it merely creates a civil cause of action for the recovery of damages. *See McDonald's Corp. v. Levine*, 108 Ill.App.3d 732, 64 Ill.Dec. 224, 439 N.E.2d 475 (1982). *See also Marks*, which, construing the predecessor to the Act, determined that the minimum damage provisions contained therein for civil suits were created for the purposes of providing compensation, discouraging violations, and encouraging aggrieved citizens to bring civil actions. The fact that Section 5725(a)(1) provides that an aggrieved party's actual damages shall be no less than the stated liquidated damages does not convert a provision for a recovery of damages to one imposing a civil penalty as Appellants would have this Court hold. Liquidated damages are not the equivalent of a penalty. *See Department of Environmental Resources v. Hartford Accident & Indemnity Co.*, 40 Pa.Commonwealth Ct. 133, 396 A.2d 885 (1979). *See also Marshall v. Brunner*, 668 F.2d 748 (3d Cir.1982) (holding that the liquidated damages provision of the federal Fair Labor Standards Act provides for compensation to injured employees, and not a penalty).[5] Therefore, the trial court correctly held that an action under Section 5725 of the Act falls under the six-year "catchall" limitations period of 42 Pa.C.S. § 5527 as this cause of action is not specified elsewhere in the pertinent subchapter of Title 42.

## II

Appellants next argue that disclosure to state and federal tax investigators is authorized by Section 5717(a) of the Act, which provided at the time relevant to this action:

---

**5.** By contrast, compare Section 5725(a) of the Act with Section 11 of the Unfair Insurances Practices Act, Act of July 22, 1974, P.L. 589, *as amended,* 40 P.S. § 1171.11, which provides clearly for a civil penalty for designated violations.

### § 5717. Disclosure or use of contents of wire or oral communications or derivative evidence

(a) **Investigative activities.**—Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire or oral communication, or evidence derived therefrom, may disclose such contents or evidence to another investigative or law enforcement officer or make use of such contents or evidence to the extent that such disclosure or use is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.

18 Pa.C.S. § 5717(a), *as amended.* Appellants contend that either the IRS and PDR investigators are "investigative or law enforcement officers" for purposes of Section 5717(a) or that disclosure to such investigators is "appropriate to the proper performance of the official duties" of officers who properly intercept communications pursuant to the Act. This Court agrees with the analysis and conclusion of the trial court that neither of Appellants' contentions is correct.

■ Preliminary to a discussion of this issue, it must be noted that the Pennsylvania Supreme Court has unqualifiedly held that the provisions of the Act must be strictly applied and that they must be strictly construed. As the Court stated in *Boettger v. Loverro (Loverro I)*, 521 Pa. 366, 370-71, 555 A.2d 1234, 1236-37 (1989), *vacated and remanded on other grounds, Easton Publishing Co. v. Boettger*, 493 U.S. 885, 110 S.Ct. 225, 107 L.Ed.2d 178 (1989) [6]:

Pennsylvania's Wiretapping and Surveillance Control Act, is a pervasive scheme of legislation which suspends an individual's constitutional rights to privacy only for the limited purpose of permitting law enforcement officials, upon a showing of probable cause, to gather evidence necessary to bring about a criminal prosecution and conviction. The statute sets forth clearly and unambiguously by whom and under what circumstances these

6. This case and *Boettger v. Loverro (Loverro II)*, 526 Pa. 510, 587 A.2d 712 (1991), are related factually to the instant case in that all arise from the interception by the State Police of the communications made by Boettger to Dickerson.

*otherwise illegal practices* and their derivative fruits may be used. (Emphasis added.)

More recently, the Court held:

[W]here an act is in derogation of this Commonwealth's constitutionally protected right to privacy [as is the Act] its provisions must be strictly applied.

. . . .

In the words of Article I, § 25 of the Constitution of Pennsylvania, 'except[ed] out of the general powers of government . . . [to] forever remain inviolate,' is the right of the people to 'be secure in their persons, houses, papers and possessions from unreasonable searches and seizures . . .' Article I, § 8. If the surveillance permitted by the Act is to meet the test of reasonableness, it is essential that, at a minimum, *all* the requirements directed by the Legislature be met. *No* violations of *any* provisions of the Act will be countenanced, nor will the failure of prosecutors to diligently follow the strict requirements of the Act be lightly overlooked. We must remain steadfast in this determination because there can be no greater infringement upon an individual's rights than by an indiscriminate and unchecked use of electronic devices. Where, in the wisdom of the legislature, such devices may be authorized, as in the present act, that use will be strictly adhered to and jealously enforced; for the alternative, no privacy at all, is unthinkable. (Emphasis in original.)

*Commonwealth v. Hashem*, 526 Pa. 199, 206, 584 A.2d 1378, 1382–83 (1991). In *Hashem*, the Court suppressed, in a criminal prosecution, evidence of a crime unrelated to the crimes specified in the interception authorization because the prosecution failed to adhere to the provisions of Section 5718 of the Act, governing the procedure for the disclosure of evidence of such crimes in a criminal proceeding. It is further noted that unless authorized by the Act, a person may be guilty of a felony of the third degree for a willful interception or disclosure of the contents of an intercepted wire, electronic, or oral communication. 18 Pa.C.S. § 5703.

146

With this background in mind, this Court shall address Appellants' argument that the disclosure in this case was authorized by the Act.

    ■    Section 5702 of the Act defines "investigative or law enforcement officer" in part as "[a]ny officer of the United States or of the Commonwealth or political subdivision thereof, who is empowered by law to conduct investigations of or to make arrests for *offenses enumerated in this chapter*...." 18 Pa.C.S. § 5702, *as amended,* (emphasis added). The offenses enumerated in the chapter are found at Section 5708 of the Act which sets forth a list of nearly forty crimes ranging from murder to various misdemeanors, but not including violations of the Internal Revenue Code or any Pennsylvania tax statute other than the Pennsylvania Cigarette Tax Act. Therefore, the investigators of the IRS and PDR to whom Miklich disclosed the intercepted communications are not defined as "investigative or law enforcement officers" for purposes of the Act. *Accord Scott v. United States,* 573 F.Supp. 622 (M.D.Tenn.1983), *rev'd on other grounds, Resha v. United States,* 767 F.2d 285 (6th Cir.1985), *cert. denied,* 475 U.S. 1081, 106 S.Ct. 1458, 89 L.Ed.2d 716 (1986).[7] *See also In re Spinelli,* 212 N.J.Super. 526, 515 A.2d 825 (1986) wherein the court, in construing New Jersey's counterpart to the Act, held that disclosure to "investigative or law enforcement officers" is authorized only to the limited class of individuals defined in the act as "investigative or law enforcement officers" under a strict construction similar to that made herein.

7.  *Scott* was decided under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520 (Federal Wiretap Act). Pennsylvania's Act is patterned after the Federal Wiretap Act and the provisions of each act are similar. *Commonwealth v. Blystone,* 519 Pa. 450, 549 A.2d 81 (1988), *aff'd,* 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990). The conclusion of the court in *Scott* that the Federal Wiretap Act did not authorize disclosures by the police to IRS investigators is based upon an analysis similar to that made by this Court in concluding that the disclosures made by Miklich to the IRS and PDR investigators are not authorized by the Act.

This Court refuses to adopt the holdings of federal courts which have found IRS agents to be "investigative or law enforcement officers" under the Federal Wiretap Act. *See, e.g., United States v. Iannelli*, 477 F.2d 999 (3d Cir.1973), *aff'd on other grounds*, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975); *Fleming v. United States*, 547 F.2d 872 (5th Cir.), *cert. denied*, 434 U.S. 831, 98 S.Ct. 113, 54 L.Ed.2d 90 (1977); *Spatafore v. United States*, 752 F.2d 415 (9th Cir.1985). The courts in *Iannelli* and *Fleming* came to the conclusion that IRS agents are "investigative or law enforcement officers" for purposes of the Federal Wiretap Act without analysis of the statute and its purposes as was done in *Scott*.[8] Moreover, *Iannelli, Fleming,* and the cases adopting their findings dealt with the issue of whether to *suppress* in civil tax proceedings disclosures to IRS agents which had previously been admitted into evidence in criminal proceedings. Thus, as the court in *Resha* held, the holding in these cases is quite narrow and does not conclusively determine the issue of whether IRS agents are "investigative or law enforcement officers" for purposes of the Federal Wiretap Act. 767 F.2d at 287. The analysis of *Scott* comports more with the strict construction of the Act mandated by the Pennsylvania Supreme Court than does the unsupported conclusions of *Iannelli* and *Fleming*. Further, in light of the strict construction to be afforded the Act, this Court must reject the argument of the amicus curiae that the definition of "investigative or law enforcement officer" set forth in Section 5702 of the Act does not apply to Section 5717(a). Section 5702 provides that the definitions set forth in that section are to be used in construing the Act "unless the context clearly indicates otherwise." 18 Pa.C.S. § 5702, *as amended.* Nothing in Section 5717(a) indicates that the definition of "investigative or law enforcement officer" set forth in Section 5702 is inapplicable therein.

This Court also finds most persuasive the trial court's analysis and conclusion that Miklich's disclosure of the

**8.** *Spatafore* followed *Fleming.*

intercepted communications to IRS and PDR investigators was not "appropriate to the proper performance" of Miklich's "official duties" for purposes of Section 5717(a). Internal police practices may not serve to broaden the governmental intrusions of privacy carefully circumscribed by the Act.[9] As the trial court stated:

> The defense contends that State Police policy requiring notification to taxing authorities when there is a seizure of a large amount of cash defines 'proper performance' by a trooper which justifies the disclosure of the wiretap information. The effect of so holding would be to permit the State Police to negate the express statutory limitation on disclosure to a limited class of persons [investigative or law enforcement officers, etc.] by adoption of an internal state police policy or regulation. We decline to permit the State Police to nullify the legislature's decision to protect the privacy interests of one whose conversations are intercepted by limiting disclosure to a designated class of government officials.

Slip op. at 15. In response to Appellants' arguments that this narrow holding limits the ability of the police to cooperate among the various governmental agencies to combat wrongdoing, suffice it to say that absent the allowances made by the Act, police interception of communications as described in the Act would be illegal. *Loverro I.* Therefore, the trial court correctly held that Miklich violated the Act by disclosing contents of the intercepted communications to IRS and PDR agents.[10]

**9.** Miklich testified that he disclosed contents of the intercepted communications to the IRS and PDR investigators because of a state police policy requiring cooperation with taxing authorities and notification to those authorities if there is a seizure of currency in excess of $1000.

**10.** Uses of intercepted communications which are "appropriate to the proper performance" of an officer's duties would, as the trial court observed and case law reflects, involve those uses necessary to bring about a conviction for the crimes investigated, including disclosure to informants and prosecutors. *See Birdseye v. Driscoll,* 111 Pa.Commonwealth Ct. 214, 534 A.2d 548 (1987); *United States v. Ricco,* 566 F.2d 433 (2d Cir.1977), *cert. denied,* 436 U.S. 926, 98 S.Ct. 2819, 56

## III

Appellants argue that even if a violation of the Act occurred, civil damages are unavailable against Appellants because Miklich disclosed the intercepted communications in "good faith reliance on ... the provisions of [the Act]" believing the IRS and PDR investigators to be "investigative or law enforcement officers." 18 Pa.C.S. § 5725(c). Therefore, Appellants argue, the trial court erred by overriding the jury's finding that Miklich had acted in good faith and entering judgment n.o.v. for Boettger.

In entering judgment for Boettger, the trial court reasoned that the good faith defense of Section 5725(c) is an adoption of the holding of *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), where the Court held that a police officer could not be found liable in a civil rights action for enforcing a statute later held to be unconstitutional. The trial court read *Pierson* to hold that the defense of a good faith reliance on statutory provisions will only insulate from liability a person who relies on a provision subsequently invalidated. Thus, a misinterpretation of a statute provides no legal defense. *Accord Zweibon v. Mitchell*, 516 F.2d 594 (D.C.Cir.1975) (Bazelon, J., concurring and dissenting), *cert. denied, Barrett v. Zweibon*, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976).

■ This Court does not read *Pierson* as having the expansive holding placed upon it by the trial court. Subsequent United States Supreme Court decisions have established that a good faith defense encompasses subjective and objective aspects of whether an official knew or reasonably should have known that his or her actions would violate a person's rights [11], and recently have removed the subjective

L.Ed.2d 768 (1978); *United States v. Canon*, 404 F.Supp. 841 (N.D.Ala. 1975), *aff'd*, 554 F.2d 190 (5th Cir.1977).

**11.** *See Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). This subjective and objective test was applied by Federal Circuit Courts as the basis for the good faith defense set forth in the Federal Wiretap Act. *See Kilgore v. Mitchell*, 623 F.2d 631 (9th Cir.1980); *Jacobson v. Rose*, 592 F.2d 515 (9th Cir.1978), *cert. denied,*

element altogether, concluding that the good faith defense is available to an official if his or her conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The underpinning of this latter approach is "the special unfairness associated with charging government officials with knowledge of a rule of law that had not been clearly recognized." *Anderson v. Creighton,* 483 U.S. 635, 649, 107 S.Ct. 3034, 3044, 97 L.Ed.2d 523 (1987) (Stevens, J., dissenting). This interpretation of a qualified or good faith immunity is clearly at odds with an interpretation which holds that a good faith defense is *never* available to acts arising from a misinterpretation of a statute.[12]

This Court therefore follows the law of qualified immunity now established by the United States Supreme Court, and in so doing gives deference to the relevant legislative history of the Act cited by the Pennsylvania Supreme Court in *Loverro II,* wherein Representative Scirica requested that the good faith defense provision be removed altogether as unnecessary because the Act provides "that the violation must be a willful one, not an inadvertent one." *Id.* 526 Pa. at 525, n. 19, 587 A.2d at 720, n. 19 (quoting Legislative Journal–House of Representatives, September 21, 1978, p. 3147). Therefore, the issue of Miklich's good faith defense depends upon the objective criteria of whether Miklich violated a clearly established statutory or constitutional

442 U.S. 930, 99 S.Ct. 2861, 61 L.Ed.2d 298 (1979); *Zweibon.* The trial court submitted the issue of good faith to the jury in this matter in reliance of this test as articulated in *Jacobson.*

**12.** The trial court based its holding concerning the good faith defense in part on *Campiti v. Walonis,* 611 F.2d 387 (1st Cir.1979). In *Campiti,* however, the court disallowed a good faith defense for acts based upon a "completely erroneous" interpretation of the Federal Wiretap Act. 611 F.2d at 395. This holding does not conflict with allowing a good faith defense to be asserted where a misinterpretation of a statute lending itself to different readings occurs and where the law under that statute is not clearly established.

right of which a reasonable person would have known. *Harlow.* Moreover,

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039 (citations omitted).

The right implicated in this matter is, of course, the right to privacy. *See, e.g., Hashem.* The Act allows certain intrusions upon this right, including the disclosures contemplated by Section 5717. At the time Miklich disclosed the intercepted communications to IRS and PDR agents, there was no Pennsylvania case interpreting the limits of permissible disclosure under that section. In fact, at the time Miklich divulged the contents of the intercepted communications to the tax authorities, federal case law supported the conclusion that IRS agents and state tax agents are "investigative or law enforcement officers" and that it was in the appropriate performance of an officer's official duties to disclose relevant intercepted communications to those authorities. *See Iannelli; Fleming.* Therefore, the limits to which disclosure may be made under Section 5717(a) were at best unclear when Miklich transferred intercepted information to the IRS and PDR. Accordingly, pursuant to *Anderson* and *Harlow,* Appellants are afforded a good faith defense, and the trial court therefore erred in holding that they are not. *See also Kilgore* (good faith defense established under Federal Wiretap Act when officials and officers were proceeding without benefit of prior judicial interpretation of the relevant part of the statute and where the relevant issue was shrouded in some uncertainty).[13]

---

**13.** Boettger's argument that affording Appellants a good faith defense in this instance will allow future such violations of the Act to occur with impunity is groundless. An officer cannot disclose intercepted

Because Appellants are afforded a statutory good faith defense in this case, the order of the Court of Common Pleas of Northampton County granting judgment n.o.v. for Boettger and ordering a new trial on damages must be reversed and judgment reinstated for Appellants.[14]

## ORDER

AND NOW, this 22nd day of August, 1991, the order of the Court of Common Pleas of Northampton County is hereby reversed.

Concurring and dissenting opinion by SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge, concurring and dissenting.

I concur with the majority as to the six year statute of limitations being the limitation period in effect at the time of the events giving rise to this action; I also concur with the majority that officers of the Internal Revenue Service (IRS) of the United States Government and Pennsylvania Department of Revenue (PDR) are not investigators within the definition of "Investigative or law enforcement officer" as defined in section 5702 of the Wiretapping and Electronic Surveillance Control Act[1] (Act); I also concur with the majority that Robert E. Miklich's disclosure to the IRS and PDR agents of the information obtained by way of a wiretap pursuant to section 5704(2)(ii)[2] of the Act was not "appropriate to the proper performance" of Miklich's "official duties" under section 5717(a)[3] of the Act.

The foregoing holding[4] by the majority, which is derived from the plain, clear, unambiguous language of sections

communications to IRS or PDR agents as did Miklich in this case in good faith in light of this decision.

**14.** Appellants' remaining issue need not be addressed because of the decision reached herein.

**1.** 18 Pa.C.S. § 5702.

**2.** 18 Pa.C.S. § 5704(2)(ii).

**3.** 18 Pa.C.S. § 5717(a).

**4.** Excepting the statute of limitations issue.

5702, 5704(2)(ii), 5708, 5717(a) of the Act, not only militates, under the facts[5] of this case, against a "good faith" defense, but eliminates such a defense.

I dissent and would affirm the trial court.

**5.** I accept the majority's statement of the facts.