555 A.2d 1234

**Alfred R. BOETTGER, Appellant,**

v.

**Thom LOVERRO and Easton Publishing
Company, Appellees.**

Supreme Court of Pennsylvania.

Argued Nov. 10, 1987.

Decided March 8, 1989.

Reargument Denied May 18, 1989.*

---

* Larsen and McDermott did not participate in the consideration or
decision of this case.

E. Jerome Brose, Easton, for appellant.

Ronald W. Shipman, April L. Cordts, Easton, for appellees.

Before NIX, C.J., and FLAHERTY, ZAPPALA and PAPADAKOS, JJ.

## OPINION

ZAPPALA, Justice.

In this appeal we review an Order of the Superior Court reversing an Order of the Court of Common Pleas of Northampton County denying all parties' cross-motions for post-trial relief and entering final judgment on a jury verdict rendered in favor of Appellant. That verdict resulted from a civil action brought by Appellant against Appellee, Easton Publishing Company and one of its reporters, Thom Loverro, under § 5725 of the Wiretapping and Surveillance Control Act (Act) 18 Pa.C.S. § 5701 et seq. Section 5725 provides a civil cause of action for damages incurred due to the unlawful disclosure or use of a wire or oral communication obtained pursuant to or in violation of the Act. The trial court, in rejecting Appellee's motion, took the position that the Act created a limited right of disclosure which previously had not existed and therefor, notwithstanding the status of Appellee as "the press", "[the Legislature] evidences an overiding legislative concern for the protection of privacy. Thus, we believe that *all* disclosures and uses of wiretap information must be in strict compliance with the Act." Opinion of Common Pleas Court at 8. (Filed, March 6, 1984) (emphasis added).

The Superior Court, in reversing the trial court, 349 Pa.Super. 134, 502 A.2d 1310, created an implied exemption

from liability as to the media for violation of the disclosure provisions where the disclosure was of legitimate public concern and lawfully obtained from court records accessible to the public. We granted allocatur to determine, as a question of first impression, whether or not such an exemption should be read into § 5725. After carefully reviewing the provisions of the Act, we hold that the Act makes no provision for a media exemption nor need one be implied.

Both lower courts found the facts to be largely undisputed and those relevant to the disposition of this appeal indicate that on November 17, 1981, the State Police secured a wiretap permit from the Attorney General pursuant to § 5704(2)(ii) of the Act. At the request of the State Police, a private individual, known to Appellant, consented to a telephone tap between himself and the Appellant. Shortly thereafter, the State Police intercepted a telephone conversation between Appellant and the consenting individual which revealed the Appellant's involvement in illegal betting activities on college football games. Based upon the information obtained from the intercept, the State Police raided Appellant's home and charged him with bookmaking, pool selling and conspiracy. After being held for court on the charges, Appellant filed a timely motion for discovery, requesting the District Attorney produce a transcript of the intercepted call. Inadvertently, but in violation of the disclosure section of the Act, 18 Pa.C.S. § 5717(b), the District Attorney attached a copy of the transcript to his answer and filed it with the clerk of courts. No attempt was made by the District Attorney to direct the clerk to impound the file as required by § 5714(b) of the Act.

On March 31, 1982, a suppression hearing was held on Appellant's motion to suppress the introduction of the intercepted communication. One of the observers present at the hearing was Thom Loverro, a reporter for the Easton Express, a newspaper owned by Appellee's publishing company. Loverro expected that the hearing would disclose the contents of the wiretap, however, the hearing judge disposed of the motion without such disclosure. Following the

hearing, Loverro went to the office of the clerk of court and requested the case file. The file was made available to Loverro, who discovered the transcript of the interception which had been attached to the District Attorney's answer to Appellant's discovery request. Loverro made extensive notes on the contents of the transcript and subsequently wrote a story based upon those notes. He withheld publication of the story for approximately seven days, however, while he discussed the matter with his superiors. On April 7, 1982, the managing editor approved publication and the article was published with excerpts of Loverro's notes from the transcript.

After the publication, Appellant filed a lawsuit against Easton Publishing Company and Loverro predicated upon the common law tort of invasion of privacy and the statutory civil action created by § 5725. Subsequently, Loverro was dropped as a defendant and the common law invasion of privacy count was withdrawn. Following trial on the action, the trial judge directed a verdict in favor of Appellant as to the issue of liability. The jury then returned a verdict of $1,000 in actual damages, no punitive damages, and $17,409.43 in attorney's fees. The court en banc dismissed Appellant's post-trial assertion that punitive damages were mandatory, and likewise dismissed Appellee's motion for judgment n.o.v., attacking the directed verdict on various grounds.

In reversing the court en banc's interpretation of the Act, the Superior Court reasoned that while Appellee had indeed violated the Act by its publication of the article containing portions of the transcript, to sustain the media's liability for that violation would be a constitutional transgression and therefore deemed it necessary to imply a "media exemption" in the Act to preserve its constitutionality. Our reading of the Act together with other relevant Pennsylvania precedent, however, leads us to conclude that the exemption created by the Superior Court is unnecessary.

Pennsylvania's Wiretapping and Surveillance Control Act, is a pervasive scheme of legislation which suspends an

individual's constitutional right to privacy only for the limited purpose of permitting law enforcement officials, upon a showing of probable cause, to gather evidence necessary to bring about a criminal prosecution and conviction. The statute sets forth clearly and unambiguously by whom and under what circumstances these otherwise illegal practices and their derivitive fruits may be used. Section 5703 of the Act, sets forth the specific prohibition against the interception and disclosure of these materials

§ 5703. Interception, disclosure or use of wire or oral communications

Except as otherwise provided in this chapter, a person is guilty of a felony of the third degree if he:

. . . . .

(2) *willfully discloses* or endeavors to disclose to any other person the contents of any wire or oral communication or evidence derived therefrom, knowing, or *having reason to know* that the information was obtained through the interception of a wire or oral communication; . . . (emphasis added)

In addition, § 5717 of the Act sets forth the exclusive and unequivocal circumstances under which disclosure of intercepted wire or oral communications are permitted. They are:

(a) Investigative activities.

—Any investigative or law enforcement officer . . . may disclose such contents or evidence to another investigative or law enforcement officer or make use of such contents . . .

. . . . .

(c) Otherwise authorized personnel.

—Any person who, by any means authorized by the laws of another state or the Federal Government, has obtained knowledge of the contents of any wire or oral communication, or evidence derived therefrom, may disclose such contents or evidence to an investigative or law enforcement officer and may disclose such contents or evidence where otherwise admissible while giving testimony under

oath or affirmation in any proceeding in any court of this Commonwealth.

Additionally, § 5725 of the Act provides for a civil cause of action for the unlawful interception, disclosure or use of wire or oral communications. That section provides:

... Any person whose wire or oral communications is intercepted, disclosed or used in violation of this chapter shall have a civil cause of action against any person who intercepts, discloses or uses or procures any other person to intercept disclose or use such communication ...

Section 5715 requires that any transcript derived from such electronic surveillance be sealed.. Section 5725 provides a defense to the civil action if the defendant acted in good faith reliance on a court order or the provisions in this chapter.

■ The Superior Court, interpreting the above sections of the Act, agreed with the lower court determination that Appellee's reporter was not a person statutorily authorized to disclose the communications in question. In publishing the newspaper article containing quotations from the transcript, Appellee therefore both disclosed and used Appellant's intercepted conversation in violation of the Act.

■ In addition, the court found that the specific and only defense provided by § 5725(c) was not available to Appellee inasmuch as there existed no court order directing the clerk to unseal the transcript and make it available to either Appellee or the general public. In these findings we concur. We also accept the Superior Court's determination that § 611 of the Restatement (2nd) of Torts, Fair Report Privilege, is not applicable to Appellee inasmuch as the transcript did not satisfy the § 611 requirement that the published defamatory material be "contained in a report of an official action or proceeding or of a meeting open to the public and dealing with matters of public concern". Id.

We depart from the rationale of the Superior Court, however, where it concludes that it must, of necessity,

fashion an implied privilege for the sole benefit of the media in order to maintain the constitutionality of the Act. In support of its holding, the court relies on federal Supreme Court precedent set forth in *Smith v. Daily Mail Publishing Company*, 443 U.S. 97, 102, 99 S.Ct. 2667, 2670, 61 L.Ed.2d 399 (1979); *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1979); *Landmark Communications Inc. v. Virginia*, 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978) and *Oklahoma Publishing Company v. District Court of Oklahoma*, 430 U.S. 308, 97 S.Ct. 1045, 51 L.Ed.2d 355 (1977).

In predicating its decision on this line of cases, the Superior Court concluded that the facts of the instant case were indistinguishable from the factual situations presented in those cases. For the reasons that follow, we disagree.

In *McLaughlin v. Philadelphia Newspapers Inc.*, 465 Pa. 104, 348 A.2d 376 (1975), this Court held that under the First Amendment to the United States Constitution, the press enjoyed no greater right of access to information than that afforded to the general public. There is cogent reasoning for this principle; for what is the media if not the eyes, ears and, at times, the alter ego of the public? As such, there is no justification to allow the media a unique prerogative to trespass where the general populace is barred. Were we to affirm the decision of the Superior Court, we would effectively be bestowing upon the media a preeminent right to which they are not entitled. The Act is clear as to who is authorized to violate a citizen's right to privacy. That authority is limited to the enumerated law enforcement officials functioning in conformity with the limited purpose of the Act.

Having determined that a privilege for the media does not appear on the face of the Act, we must determine whether the Act, when applied to the facts before us, can be differentiated from the *Cox, Landmark Communications* line of cases in a manner that will preserve the vitality of the Act.

The common thread running through the *Cox* line of cases is the Constitutional tenet that a state may not impose prior restraint or penal sanction upon the media for publishing lawfully obtained, truthful information contained in official court records open to public inspection. In *Cox,* the Supreme Court invalidated a Georgia statute which prohibited the news media from publishing or broadcasting the name or identity of a rape victim and provided misdemeanor penalties for its violation. A reporter for Cox had obtained the name of a rape victim by examining copies of indictments handed to him in open court by a clerk, and subsequently caused the identity of the victim to be broadcast; an act for which Cox was sued civilly by the victim's father. The Court, in pronouncing the statute constitutionally infirm, indicated that the operant factor in its holding was that the prohibited sanction applied to information "from judicial records which are maintained in connection with a public prosecution and *which themselves are open to public inspection.*" 420 U.S. at 491, 95 S.Ct. at 1044 (emphasis added) (In effect, the statute prohibited the media from disclosing what was otherwise public knowledge).

Similarly, in *Oklahoma Publishing Co.,* the Court struck down legislation prohibiting publication of the name and picture of a juvenile defendant. The identity of the juvenile was acquired by reporters solely through their presence at open court proceedings. Correspondingly, in *Smith,* the Court held that West Virginia could not punish truthful publication of an alleged juvenile delinquent's name where the information was lawfully obtained. In this instance, the identity was gleaned by monitoring police radio frequencies and querying eyewitnesses to the crime. Finally, in *Landmark Communications,* the case most analogous to the instant facts, the Court held that Virginia could not impose criminal sanctions on the media for publishing confidential information relating to judicial disciplinary proceedings in violation of its state constitution and statutory law.

Having thoroughly examined the reasoning behind these decisions, it is clear that the case before us is sui generis

and therefore does not require the result produced below. Initially, the present case is distinguishable from the *Cox* rationale by virtue of the fact that the information sought to be prohibited in those cases was of a type legally and publically obtainable either from official court records *intentionally* placed in the public domain, or from information readily obtainable through attendance in open court. In contrast, in this case the information was neither readily obtainable in open court nor *intentionally* placed in records accessible to the general public. Since the Act requires that all transcripts be sealed until such time as there is disclosure, it cannot be said that the transcript obtained by Appellee's reporter was officially placed in the court record and intended to be accessible to the public. The statute clearly sets forth the mandatory sealing of the transcript and its ability to be disclosed by one not authorized *only* upon a court order. *See* 18 Pa.C.S. §§ 5715 and 5725(c).

Unfortunately, the attachment of the transcript to the District Attorney's answer to the discovery motion corrupts the straightforward disposition of this case. We are not inclined however to obviate the otherwise confidential nature of the transcript based solely upon its happenstance discovery by Appellee's reporter in an otherwise public record. It is of legal and public record that information obtained through the Act *shall* be sealed and that "[t]he presence of the seal provided by this section, *or a satisfactory explanation for its absence,* shall be a *prerequisite* for the disclosure of the contents of any wire or oral communication, or evidence derived therefrom, under § 5717(b)." 18 Pa.C.S. § 5714 (emphasis added).

■ Since the statute neither prohibits nor sanctions the mere possession of transcripts, but only their disclosure, the very possession of the notes from the transcript by Appellee and/or its reporter did not constitute a violation until such time as the actual disclosure of this information was accomplished.

The more proximate and difficult holding we must reconcile with the case before us is the circumstances presented in *Landmark Communications, supra.* In *Landmark,* confidential information concerning the disciplinary actions taken against a judge by the Virginia Judicial Inquiry and Review Commission was obtained in violation of a Virginia code which made it unlawful to divulge the identification of a judge when he was the subject of an investigation and hearing by the commission. The statute provided criminal penalties for its violation. The United States Supreme Court defined the narrow and limited question as "whether the First Amendment permits the criminal punishment of third persons who are strangers to the inquiry, including the news media, for divulging or publishing truthful information regarding confidential proceedings of the judicial inquiry and review commission. 435 U.S. at 837, 98 S.Ct. at 1540 (footnote omitted). The court held that it did not and based its decision on the fact that neither the Commonwealth's interest in protecting the reputation of its judges nor its interest in maintaining the institutional integrity of its courts is sufficient to justify the subsequent punishment of speech here at issue. Interestingly, the court declined to completely answer the broader question, unquestionably germane to the present inquiry and first acknowledged, but not decided, in *Cox,* which asks whether the publication of truthful information, withheld by law from the public domain, enjoys a similar privilege as does public information released to the general public in official court records? This is the precise question now before us. The *Landmark* court declined to address all the implications of this question but would decide it only in relation to the unique circumstances presented there, to wit, whether that specific publication enjoyed such a privilege.

It is clear from our reading that the holding in *Landmark* is, of necessity, limited to its particular facts. The operant factors in the decision were a penal statute and the balancing of First Amendment rights versus the state's

interest in protecting the reputation of its judges and maintaining the institutional integrity of its court.

Distinguishing the case before us from *Landmark*, we note here, we are not dealing with a penal sanction but a civil one.[1] Additionally, the interest sought to be balanced in *Landmark*, the right to the reputation of judges and maintaining the integrity of the courts weighs much more heavily upon the side of First Amendment privilege, that interest being directly related to government and the public's interest in scrutiny of its function.

Before us, however, are two equally weighted fundamental interests which, because of their unique nature, we find operate to tip the scale in the opposite direction of the counterpoise established in *Landmark*. Those interests are the right of a citizen of this Commonwealth to enjoy privacy and, the specifically enumerated right of our citizens to protect their reputation. Pennsylvania Constitution, Article I, § 11.

The right to privacy in the present case is a much stronger interest than the privacy interest weighed by the United States Supreme Court in *Cox* and its progeny. This is true for the privacy interests in *Cox* were viewed in terms of the disclosure of information otherwise of public record. In contrast, the privacy interest we now consider consists of information gathered in temporary derogation of a Pennsylvania citizen's right to privacy and protected by our Commonwealth through a pervasive legislative scheme uncompromisingly delineating and limiting its collection and use. Weighing these interests against those contained in the First Amendment's guarantee of freedom of the press, we perceive it readily apparent that Pennsylvania's interest in protecting its citizen's rights far outweighs the negligible effect the Act's blanket prohibition on disclosure creates. To understand our rationale in minimalizing the interest of

1.  We note parenthetically that the Act does provide criminal sanctions for its violation. 18 Pa.C.S.A. § 5703, 5719, however, the Appellee not having been charged under that section, the question is reserved for another day.

the newspaper, it is important to bear in mind that, but for the enactment of the Act both the collection and dissemination of electronically obtained conversations would be clearly and *absolutely* prohibited. From this we reason that *only* when the protected information is disseminated either through an order of court unsealing it or through its use as evidence in an open court proceeding does the media's interest rise above those of the Commonwealth and its citizens.

■ Because we find no fault with the explicit language of the Act, we hold that information validly gathered pursuant to the provisions of the Act may not be disclosed, except under the limited mechanisms found in the Act, even though one not authorized to disclose such information obtains it through inadvertance or other means.

Therefore, the order of the Superior Court is reversed and the judgment of the Court of Common Pleas of Northampton County is reinstated.

LARSEN, J., and McDERMOTT, J., did not participate in the consideration or decision of this case.

NIX, C.J., files a dissenting opinion.

NIX, Chief Justice, dissenting.

I dissent.

Today the majority holds that a newspaper is liable in a civil action under Section 5725 of the Wiretapping and Surveillance Control Act (Act), 18 Pa.C.S. § 5725, for publishing the contents of an intercepted communication obtained by one of its reporters from a public court file. The majority's disposition of this appeal ignores a vital fact in these circumstances, *i.e.*, that the transcript was publicly disclosed by the district attorney, who mistakenly attached it to a public court document.

The Act provides for the judicial maintenance of the secrecy of the recordings and supporting documents of intercepted communications in Sections 5714–5716. The recordings, along with any transcripts, orders and reports, must be sealed, held in custody, and disclosed only under certain conditions.

The disclosure in this case resulted from the inadvertence of the judicial system. Having placed the transcript within the public file, the members of the press, like anyone else in the community, had access to it and had no personal obligation to maintain the secrecy of the documents. The fact that the transcript is supposed to be kept secret is not directed at the person who accesses it in a public file, but is directed at the persons entrusted to keep it secret. That is the judicial system.

Thus, the burden for securing the secrecy of the transcripts was placed by statute on the judicial system which failed, in this instance, to sustain that burden. It is the judicial system which is responsible for the *public* disclosure of the transcript for once it became a part of the public file, it became accessible to the public, including the press. To place the onus on the newspaper to keep secret that which is public knowledge seriously conflicts with the First Amendment rights guaranteed by the United States Constitution. *Landmark Communications, Inc. v. Virginia,* 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978). Although the majority attempts to distinguish *Landmark, supra,* from the case at bar, its distinction remains unconvincing. In *Landmark,* the United States Supreme Court held that the First Amendment does not permit criminal prosecution of a newspaper for publishing truthful information regarding confidential judicial proceedings. Here the newspaper published information from a public file which it could properly have presumed to be public knowledge. Clearly the right involved here "lies near[er] the core of the First Amendment" protection. *Id.* at 839, 98 S.Ct. at 1541.

For all of the foregoing reasons, I dissent.