OPINION OF THE COURT
Robert G. Hurlbutt, J.
Defendant Thomson Publications of New York, Inc., doing business as The Palladium Times, made a preanswer motion for dismissal of the complaint on the basis that it does not state a claim against defendant upon which relief can be granted (CPLR 3211 [a] [7]). Defendants The Oswegonian, Maravi and Schreiner then moved for summary judgment, also citing CPLR 3211 (a) (7).
The complaint alleges that defendant Earhart, with the aid and complicity of defendants Sullivan and Rappaport, did eavesdrop and illegally intercept and record private telephonic communications of the plaintiffs during the years 1989, 1990 and 1991. The complaint asserts a civil claim against defendants under a Federal statute (18 USC § 2510 et seq.) which provides for criminal sanctions and civil liability for illegal wiretapping activity. The complaint alleges that defendants intentionally and maliciously used electronic, mechanical and other devices to intercept plaintiffs’ telephonic communications in order to obtain political, economic, personal and other advantage at plaintiffs’ expense. It is alleged that a certain illegally recorded tape of a private communication between plaintiffs Natoli and William Ruggio was distributed by defendants Sullivan, Rappaport and Earhart to defendant Barilla and thereafter by Barilla to the media defendants (The Palladium Times, The Oswegonian, Maravi and Schreiner). It is further alleged that The Oswegonian (the student newspaper at State University College at Oswego) and its editors, defendants Maravi and Schreiner, intentionally published, disclosed to the public and used the contents of the illegally recorded oral wire and electronic communications in an article appearing in The Oswegonian on October 31, 1991. The Palladium Times (a local daily newspaper) allegedly intentionally published, disclosed and used the contents of the same illegally intercepted and recorded tape in an article appearing on November 1, 1991. The Oswegonian and The Palladium Times allegedly acted with knowledge that the tape had been illegally obtained.
*683 On a preanswer motion under CPLR 3211 (a) (7) the inquiry of the court is limited to whether the pleading states a cause of action. (Stukuls v State of New York, 42 NY2d 272, 275.) "[W]e accept as true each and every allegation made by plaintiff and limit our inquiry to the legal sufficiency of plaintiffs claim.” (Silsdorf v Levine, 59 NY2d 8, 12, cert denied 464 US 831.) The complaint does not allege that The Palladium Times and/or The Oswegonian participated in any way in the illegal interception and recordation of the private wire or radio communications of the plaintiffs. It does allege, however, that The Oswegonian, despite having been given notice that the tape recorded conversation was an illegally intercepted private wire communication, published and disclosed the contents of the tape in an article about local politics appearing in the student newspaper on October 31, 1991, and that the day after the disclosure of contents of the tape by The Oswegonian, The Palladium Times, also on notice that the tape resulted from illegal interception of private wire communications, published an article entitled "Release of Tape at Eleventh Hour Shakes Oswego’s Mayoral Campaign” in which The Oswegonian article was discussed and contents of the tape were repeated.
18 USC § 2511 provides as follows:
"(1) Except as otherwise specifically provided in this chapter * * * any person who—
"(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication; * * *
"(c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; or
"(d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;
"shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).”
18 USC § 2520 provides in pertinent part:
"(a) * * * [A]ny person whose wire, oral, or electronic *684 communication is intercepted, disclosed, or intentionally used in violation of this chapter * * * may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate * * *
"(c) * * * (2) In any other action under this section, the court may assess as damages whichever is the greater of
"(A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or
"(B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.”
47 USC § 605, apparently pleaded in the alternative, contains similar provisions for interception of radio communications. Plaintiffs rely upon these Federal statutes creating civil liability for use and disclosure of wire, oral or electronic communications (radio communications in the case of 47 USC § 605). Nothing in the papers submitted on these motions provides any basis for the court to determine whether the communications allegedly unlawfully intercepted were wire or radio communications.
The Palladium Times and The Oswegonian seek dismissal of the statutory causes of action claiming that, as newspapers, they are protected by a blanket rule, based upon the First Amendment to the United States Constitution, prohibiting an award of damages against the media for publication of true information lawfully acquired. 18 USC § 2510 et seq., enacted in 1968, amended in 1986 and known as the Wiretap Act, prohibits all interception of wire and oral communications except as expressly authorized in the statutes. "Unauthorized interceptions and the disclosure or use of information obtained through unauthorized interceptions are crimes * * * and the victim of such interception, disclosure, or use is entitled to recover civil damages.” (Gelbard v United States, 408 US 41, 46.) The policy underlying the wiretapping and electronic surveillance statute is to protect and assure the privacy of oral and wire communications (supra, citing S Rep No. 1097, 90th Cong 2d Sess, reprinted in 1968 US Code Cong & Admin News, at 2112, 2153), and to clearly delineate limited circumstances under which interception of wire and oral communications may be authorized. (Supra.) The disclosure and use of the contents of intercepted communications where the individual knows or should know of the unauthorized interception is prohibited and is subject to the same *685 sanctions as the interception itself. This insures "protection for the wiretap victim from third parties, unrelated to the wrongdoer, who, having access to the material and a reasonable basis to know its source, might desire to disclose the information for their own purposes.” (Fultz v Gilliam, 942 F2d 396, 401.)
18 USC § 2511 clearly prohibits knowing disclosure by third parties without regard for participation in the illegal interception, and no exception is made for media. There is no general rule of law protecting the newspapers from liability for statutory damages for publication of contents of conversations illegally intercepted by others but obtained lawfully by the newspapers. In fact, the Supreme Court of the United States has declined to fashion a rule of general applicability in this area, preferring instead to "eschew[ ] absolutes in favor of a more delicate calculus that carefully weighs the conflicting interests to determine which demands the greater protection under the particular circumstances presented.” (Smith v Daily Mail Publ. Co., 443 US 97, 106 [concurring opn of Justice Rehnquist].)
In Smith v Daily Mail (supra), the defendant newspaper was prosecuted under a penal statute prohibiting the publication of the name of a juvenile defendant. The newspaper defended on the basis that the statute was an unconstitutional infringement upon its First Amendment right to publish truthful information lawfully obtained. The Supreme Court, reviewing its decisions in Landmark Communications v Virginia (435 US 829), Cox Broadcasting Corp. v Cohn (420 US 469) and Oklahoma Publ. Co. v District Ct. (430 US 308) described the rule as follows: "if a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order.” (Smith v Daily Mail Publ. Co., supra, at 103.) In Smith, the published information was lawfully obtained (investigative reporters learned the name of the juvenile defendant simply by asking witnesses and the police at the scene of the crime), and the Court held that the State interest in protecting the anonymity of the juvenile offender was not sufficiently substantial to permit the State to punish the publication of truthful information lawfully obtained. (Supra, at 104, 105.)
A similar analysis was performed by the Court in Landmark Communications (supra) where a newspaper was prose *686 cuted under a State statute prohibiting publication of confidential proceedings before a judicial conduct review committee. In Landmark, the Court also declined to pronounce a general rule that the publication of truthful information lawfully obtained is always protected by the First Amendment from sanctions imposed by statute. (Supra, at 835.) The analysis in Landmark, leading to the conclusion that the State interests protected by the statute at issue* were insufficient to justify the encroachment on First Amendment guarantees (supra, at 839), is illustrative of the balancing of the State interest against the encroachment on freedom of speech and/ or press which is performed in these cases. Each case involves an examination of the specific publication at issue and the policy underlying the statute purporting to prohibit such publication.
In Cox Broadcasting Corp. v Cohn (420 US 469, supra), an earlier case where the media appellants urged the Court to hold that the press may not be held criminally or civilly liable for publishing information that is absolutely accurate despite that it may damage reputation or individual sensibilities (supra, at 489), the Court said "[i]n this sphere of collision between claims of privacy and those of the free press, the interests on both sides are plainly rooted in the traditions and significant concerns of our society. Rather than address the broader question whether truthful publications may ever be subjected to civil or criminal liability consistently with the First and Fourteenth Amendments * * * it is appropriate to focus on the narrower interface between press and privacy that this case presents.” (Supra, at 491.) In Cox, the information published was derived from a public record open to inspection by all. Because the information was placed in the "public domain” (supra, at 495), the press could not be punished for publishing it. (Supra, at 496.)
In a more recent case, The Florida Star v B.J.F. (491 US 524), the Supreme Court observed that its decisions in "cases involving government attempts to sanction the accurate dissemination of information as invasive of privacy” have "without exception upheld the press’ right to publish.” (Supra, at 530.) The Court reiterated, though, that "we have emphasized each time that we were resolving this conflict only as it arose in a discrete factual context.” (Supra.) The rule of Smith v *687 Daily Mail Publ. Co. (443 US 97, supra) was applied in The Florida Star, resulting in a holding that the Florida statute under which the newspaper was punished for publishing the identity of a rape victim was not narrowly tailored, and no State interest of the highest order was satisfactorily served by punishing the newspaper under those circumstances.
The court finds no case precedent for the application of civil liability under 18 USC § 2520 to a newspaper or other media defendant for publication of information gleaned from an illegal wiretap. A State statute applied in a Pennsylvania case did result in an award of damages in civil liability against a newspaper (Boettgar v Loverro, 521 Pa 366, 555 A2d 1234), but, on appeal to the United States Supreme Court, the case was remanded for consideration under The Florida Star (remanded sub nom. Easton Publ. Co. v Boettger, 493 US 885). Thereafter, the Supreme Court of Pennsylvania decided the action on different grounds. The facts in Boettgar v Loverro (521 Pa 366, 555 A2d 1234, 526 Pa 510, 587 A2d 712, supra) differ from those in the instant case in that there the wiretap was legally placed by the State Police under a permit granted by the State Attorney General for law enforcement purposes. A transcript of the content of the resultant recording was inadvertently made available to a journalist reviewing the case file at the court clerk’s office. In Boettgar, as in the Cox Broadcasting—Smith v Daily Mail line of cases, the information published was not the product of wrongdoing or statutory violation in the first instance, but was, in fact, information properly part of the public records, albeit protected by statutory confidentiality (i.e., the name of the juvenile defendant in Smith v Daily Mail Publ. Co., supra, the proceedings before a judicial conduct review committee in Landmark Communications v Virginia, supra, and the identity of a victim in The Florida Star v B.J.F., supra, and Cox Broadcasting Corp. v Cohn, supra). In contrast, in the instant case the recordings were allegedly unlawfully made by private parties in the first instance. The material published was not merely leaked in violation of a statute requiring it to be kept secret — it was illegally created in the first instance — the fruit of an illegal wiretap.
18 USC § 2511 is intended to safeguard the privacy of wire and oral communications by prohibiting all surveillance except that which is conducted under carefully defined and strictly controlled procedure for the authorization of interception of communications for law enforcement purposes. (Pub L *688 90-351, § 801.) In discussion of electronic surveillance as an investigative technique, the court in Matter of Dampman v Morgenthau (158 Misc 2d 102, 109 [Sup Ct, NY County, Apr. 28, 1993]) said, " '[t]he insidiousness of electronic surveillance threatens the right to be free from unjustifiable * * * intrusion into one’s individual privacy to a far greater extent than the writs of assistance and general warrants so dreaded by those who successfully battled for the Bill of Rights * * * Bound up with this right are the individual’s interest in personal autonomy, his need to control the image of his self that is projected to the world, and his right to freedom of expression’.”
There is, of course, an equally weighty fundamental interest in the free dissemination of information, represented by the First Amendment argument upon which the defendants rely. Here, however, unlike the cases which have been decided by the United States Supreme Court as discussed hereinabove, there is no concern over the right of access to public records, records of judicial proceedings (Cox Broadcasting Corp. v Cohn, 420 US 469, supra), or reports of crimes committed (The Florida Star v B.J.F., 491 US 524, supra [where the commission of a violent crime was held to be a matter of paramount public import]). The information the publication of which was prohibited in this case was in private hands, there was no governmental custody. There is no overriding interest in open government to be protected, nor reliance upon the government’s having placed the information in the public domain. (See, Cox Broadcasting Corp. v Cohn, 420 US 469, supra; Smith v Daily Mail Publ. Co., 443 US 97, supra; Oklahoma Publ. Co. v District Ct., 430 US 308, supra.) The right of public access to information about government and other matters of paramount public import will not be threatened by application of the Federal statutes to the newspapers in this case. Although the material published here was of public interest, it cannot be said to be material of paramount public significance or import. The conversations intercepted by others and disclosed by the media were purely private and no public interest is served by their revelation. The governmental interest in protecting the privacy of telephonic communications from unauthorized intrusion is sufficiently substantial to permit the punishment of the publication of truthful information lawfully obtained in this case.
In permitting the maintenance of these causes of action against the newspapers, the danger of chilling journalism, or *689 generating overdeterrence and an atmosphere of "timidity and self-censorship” (The Florida Star v B.J.F., supra, 491 US, at 535), is minimal. Here, the newspapers knew they were dealing with recorded conversations between unconsenting parties. The rule prohibiting the publication of the contents of illegal wiretaps or other electronic surveillance with knowledge of the illegality has sufficiently defined parameters to be readily understood and applied. The civil sanctions of 18 USC § 2520 are narrowly tailored to a Federal (constitutional) interest of the highest order. The motions to dismiss the third and fourth causes of action are denied.

 The State interests were found to be protection of Judges from injury to reputation and protection of the institutional reputation of the courts.