**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Angel ROSA, Appellee.**

**Commonwealth of Pennsylvania, Appellant.**

v.

**John J. FRANK, Appellee.**

Superior Court of Pennsylvania.

Argued March 22, 2011.

Filed May 19, 2011.

Reargument Denied July 26, 2011.

---

---

Nichole L. Eisenhart, Assistant District Attorney, Lebanon, for Commonwealth, appellant.

Elizabeth Judd, Public Defender and Nicholas J. Sidelnick, Public Defender, Lebanon, for appellees.

BEFORE: BENDER, DONOHUE and OTT, JJ.

OPINION BY BENDER, J.:

The Commonwealth of Pennsylvania appeals the trial court's orders suppressing evidence of unlawful drug sales obtained by an officer of the Lebanon County Drug Task Force when the officer answered cell phones belonging to the two defendants and pretended to be the phones' owner. The trial court concluded that the officer's conduct constituted an illegal interception under Pennsylvania's Wiretap Act. The Commonwealth contends that no interception occurred, as the officer was a direct participant in the respective phone conversations. Upon review, we conclude that the trial court did not err in suppressing the evidence, and we affirm its orders.

The trial court, the Honorable Bradford Charles, presided at Frank's suppression hearing and summarized the relevant factual and procedural history as follows:

On October 2, 2009, the Lebanon County Drug Task Force seized a cellular telephone as a result of a narcotics investigation. After seizing the telephone, Detective Adam Saul noticed that it would ring frequently. On October 9, 2009, Detective Saul answered an incoming call and said: "What's up?" A male on the other end of the phone identified himself as "Angel" and asked: "Can I get some bud?" Detective Saul re-

sponded in the affirmative and arranged to meet the prospective purchaser of marijuana at the Lebanon Budget Motel.

Later on October 9, 2009, Detective Saul and Detective Ryan Mong waited at the Budget Motel parking Lot. They encountered a silver sedan vehicle that was occupied by [defendant Frank]. Detective Saul arrested [Frank] for attempting to order marijuana. In [Frank's] possession was a cellular telephone with a number identical to the one that was used to make the call earlier in the day. On February 22, 2010, [Frank] filed a Pre–Trial Motion to Suppress Evidence. A hearing was conducted on March 31, 2010. At the hearing, the District Attorney and [Frank's] attorney stipulated the following additional facts:

(1) That Detective Saul did not obtain a search warrant prior to using the seized telephone;

(2) That Detective Saul did not obtain a Court Order pursuant to the Pennsylvania Wiretap Act in order to use the seized phone;

(3) That Detective Saul did not obtain consent from the owner of the seized phone to use it in order to communicate with [Frank] or anyone else.

Trial Court Opinion, 5/12/10, at 2–3. At the conclusion of the evidentiary hearing, Judge Charles determined that Detective Saul's conduct in using the cell phone with neither a wiretap warrant nor the consent of its owner ran afoul of this court's holding in *Commonwealth v. Cruttenden*, 976 A.2d 1176 (Pa.Super.2009). Accordingly, the court granted Frank's motion and suppressed all evidence obtained as a result of Detective Saul's use of the cell phone.

Frank's case was consolidated for appellate review with that of Angel Rosa. The Honorable John C. Tylwalk presided at Rosa's suppression hearing and summa-

rized the factual and procedural history of that case as follows:

On November 19, 2009, members of the Lebanon County Drug Task Force seized a cellular telephone as part of a narcotics investigation. During an examination of the cellular phone, Detective Adam Saul ... noticed several new messages and recent calls. Several of the missed calls were from a phone number identified as "Cable."

At approximately 4:46 p.m. on November 19, 2009, the number identified as "Cable" called the cellular phone that had been seized by the Lebanon County Drug Task Force. Detective Saul answered the call and inquired "What's up?" A male voice asked "Are you home?" Detective Saul responded, "This is J, I'm not home, how bout 12th and Cumberland?" The male voice stated, "I can do that." Detective Saul then told him to come to the Budget Motel parking lot.

Approximately twenty minutes later, Detective Saul placed a telephone call utilizing the seized cellular phone to the number identified as Cable. A male answered and said "I'll be there in a minute, I'm waiting for a ride. You said 12th and Cumberland?" Detective Saul responded, "Yeah, at the Budget." The male replied, "You want me to call when I'm there?" Detective Saul said, "Yeah, how much you need?" The male responded, "A twenty, is that alright?" Detective Saul replied, "Yeah."

At approximately 5:29 p.m., Detective Saul received an incoming call on the cellular telephone, which had been seized, from the number identified as Cable. A male voice indicated, "I'm on my way now." At approximately 5:50 p.m., Detective Saul received another call, on the cellular telephone which had been seized, from the number identified as Cable. A male voice stated, "I'm here." As Detective Saul answered the

call, a Ford Explorer turned into the parking lot of the Budget Motel. A male passenger in the front seat of the Ford Explorer was on the telephone as the vehicle entered the parking lot. Members of the Lebanon County Drug Task Force approached the vehicle. The front seat passenger was identified as [Rosa]. Detective Saul used the cellular telephone which had been seized to call the number identified as Cable. The cell phone in [Rosa's] pocket rang.

Trial Court Opinion, 6/18/10, at 2–3.

At Rosa's suppression hearing, like the parties in the companion case, Rosa and the Commonwealth stipulated the following facts:

1. Detective Saul did not obtain a search warrant to access and answer incoming calls to the seized cellular phone.

2. Detective Saul did not obtain a court order pursuant to the Pennsylvania Wiretap Act as to the seized cellular phone.

3. Detective Saul did not obtain consent from the owner of the seized cellular telephone to use it to set up the attempted drug transaction.

*Id.* at 1. At the conclusion of the suppression hearing, Judge Tylwalk, like Judge Charles, found Detective Saul's use of the cell phone violative of Pennsylvania's Wiretap Act and granted Rosa's suppression motion.

The Commonwealth has now filed this appeal raising the following question for our review as to both appeals:

A. WHETHER THE TRIAL COURT ERRED IN FINDING THAT THE CONDUCT OF THE POLICE IN ANSWERING A SEIZED CELLULAR PHONE CONSTITUTED AN UN-

LAWFUL INTERCEPTION UNDER PENNSYLVANIA'S WIRETAP ACT? Brief for Appellant at 5.

■■■ Our analysis of this question begins with the presumption that "[w]here a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible." *Commonwealth v. Ruey*, 586 Pa. 230, 892 A.2d 802, 807 (2006) (Opinion Announcing the Judgment of the Court) (quoting *Commonwealth v. DeWitt*, 530 Pa. 299, 608 A.2d 1030, 1031 (1992)). If the trial court denies the motion, we must determine "whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error." *Commonwealth v. McClease*, 750 A.2d 320, 323 (Pa.Super.2000). If the appeal is filed by the Commonwealth, we may consider "only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted." *Commonwealth v. Deck*, 954 A.2d 603, 606 (Pa.Super.2008). "Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts." *McClease*, 750 A.2d at 323–24.

In support of its question, the Commonwealth asserts that inasmuch as Detective Saul was a party to the calls he took on the respective defendants' cell phones, his use of the phones cannot be deemed an interception. Brief for Appellant at 11. The Commonwealth argues further that the trial courts' reliance on *Cruttenden* is misplaced and that this case is in fact controlled by this Court's disposition in *Commonwealth v. Proetto*, 771 A.2d 823 (Pa.Super.2001). Following consideration of both *Cruttenden* and *Proetto*, as well as the provisions of the Wiretap Act, and the evidence adduced at the omnibus pre-trial hearings, we find no error in the trial court's respective orders.

Pennsylvania's "Wiretapping and Electronic Surveillance Control Act," 18 Pa. C.S. § 5701, *et seq.*, more commonly known as the Wiretap Act, prescribes, *inter alia*, the extent to which law enforcement officers may intercept the oral communications of others without their consent or knowledge. Subject to exceptions enumerated elsewhere in the statute, Section 5703 broadly prohibits interception of oral communication as follows:

**§ 5703. Interception, disclosure or use of wire, electronic or oral communications**

Except as otherwise provided in this chapter, a person is guilty of a felony of the third degree if he:

(1) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication;

(2) intentionally discloses or endeavors to disclose to any other person the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know that the information was obtained through the interception of a wire, electronic or oral communication; or

(3) intentionally uses or endeavors to use the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know, that the information was obtained through the interception of a wire, electronic or oral communication.

18 Pa.C.S. § 5703. The statute also defines the following terms pertinent to the investigations at issue here:

**"Electronic communication."** Any transfer of signs, signals, writing, im-

ages, sounds, data or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photo-optical system, except:

(1) Deleted.

(2) Any wire or oral communication.

(3) Any communication made through a tone-only paging device.

(4) Any communication from a tracking device (as defined in this section).

* * * *

"**Intercept.**" Aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device. The term shall include the point at which the contents of the communication are monitored by investigative or law enforcement officers.

* * * *

"**Oral communication.**" Any oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation. The term does not include any electronic communication.

* * * *

"**Wire communication.**" Any aural transfer made in whole or in part through the use of facilities for the transmission of communication by wire, cable or other like connection between the point of origin and the point of reception, including the use of such a connection in a switching station, furnished or operated by a telephone, telegraph or radio company for hire as a communication common carrier. The term includes any electronic storage of such communication.

18 Pa.C.S. § 5702.

■■■ As the foregoing language renders with stark clarity, the Wiretap Act specifically recognizes the speaker's interest in the privacy of his oral communication by protecting utterances he would justifiably expect to be private under the circumstances. *See id.* Consequently, law enforcement officers may not listen to such utterances using any electronic or mechanical device without consent or prior judicial approval. *See id.;* 18 Pa.C.S. §§ 5704(2)(ii), 5708. *See also Deck,* 954 A.2d at 609. Moreover, where the conversation takes place on a cellular telephone, the use of related telecommunications technology renders it either an electronic or wire communication, eliminating the requirement for protection of oral communications that the speaker demonstrate a privacy expectation. *See id.* (citing 18 Pa. C.S. §§ 5702, 5703); *Cruttenden,* 976 A.2d at 1182. Nevertheless, because the protections of the Wiretap Act emanate from the speaker's right to privacy, all of the Act's provisions are to be strictly construed. *See Deck,* 954 A.2d at 607. Accordingly any interception by law enforcement officers not carried out in accordance with the exceptions of section 5704 subjects all resulting evidence to suppression under the statutory exclusionary rule in section 5721.[1] *See id.*

---

1. Consistent with the limitations imposed by the Wiretap Act and its statutory exclusionary rule, our Supreme Court has recognized that the practices it governs are inherently illegal and may be carried on by law enforcement agents only within closely circumscribed parameters. *See Boettger v. Loverro,* 521 Pa. 366, 555 A.2d 1234, 1236–37 (1989). The following excerpt is illustrative:

Pennsylvania's Wiretapping and Surveillance Control Act, is a pervasive scheme of legislation which suspends an individual's constitutional rights to privacy only for the limited purpose of permitting law enforcement officials, upon a showing of probable cause, to gather evidence necessary to bring about a criminal prosecution and conviction. The statute sets forth clearly and unambiguously by whom and under what cir-

 On the basis of the record before us, we find no support for the Commonwealth's assertion that Detective Saul's participation in telephone conversations on the seized telephones did not constitute an interception. Although, as the Commonwealth argues, the detective spoke directly with the respective defendants when he answered their calls, he did so under false pretenses, posing as the owners of the respective phones in order to exploit the trust of the callers. Nevertheless, he was not the party to whom the phones were registered, had no prior acquaintance with the callers, and, consequently, was not the individual they expected to reach. Moreover, he engaged in both conversations without the knowing consent of either the phones' owners or the defendants themselves, who assuredly would not have spoken with him had they known his identity.

In this latter regard, this case is wholly analogous to our holding in *Cruttenden, supra*. In that case, a panel of the Court addressed another Commonwealth appeal in which the trial court, correctly, had suppressed evidence obtained by police through the interception of text messages sent from the defendant's cell phone. As in this case, the officer communicated with defendant Jeffrey Cruttenden about the sale of illegal drugs using the cell phone of his confederate, Michael Amodeo, whose cooperation the officer had obtained after a narcotics arrest. Accessing the phone *with Amodeo's consent*, the investigating officer initially responded to a text message from Cruttenden and then answered and sent additional text messages using Amodeo's phone, purporting to be Amodeo. *See id.* at 1181. Information exchanged in the messages directly enabled the police to locate and arrest Cruttenden, prompting a motion to suppress all of the evidence obtained through the use of the text messages on the basis of the Wiretap Act. *See id.* The trial court granted the motion and the Commonwealth appealed, relying on *Proetto*.[2]

In that appeal, the Commonwealth raised the very argument it recites here that because the officer was a direct participant in the exchange of the text messages, no interception within the meaning of the Wiretap Act had occurred. *See id.* at 1180–81 ("[The Commonwealth] claims that the Wiretap Act does not apply to this case, because the text messages were not 'intercepted' pursuant to the statutory definition.... [T]he Commonwealth contends that 'once Trooper Houk began to respond to the [t]ext messages posing as Amodeo, he was the intended recipient of the communications, thus the Wiretap Act does not apply.'"). Upon review of the case, our distinguished colleague Judge Dono-

---

cumstances these *otherwise illegal practices* and their derivative fruits may be used. *Cruttenden*, 976 A.2d at 1179 (quoting *Boettger*, 555 A.2d at 1236–37 (emphasis in *Boettger*)).

2. In *Proetto*, a panel of this Court addressed a challenge by the defendant to the trial court's refusal to suppress evidence of sexual advances the defendant had made toward the 15–year–old victim in an internet chat room. The defendant had previously "chatted" on numerous occasions with the victim, whose screen name in the chat room was "Ellynn." The victim saved and forwarded the defendant's messages to the police and contacted the investigating officer when the defendant again appeared in the chat room. The officer, in turn, created a new account, entered the chat room under the fictitious name "Kelly15F," and began a conversation with the defendant. The defendant then made advances on "Kelly15F" substantially similar to those he had made on the victim. Addressing the defendant's challenge to the trial court's denial of suppression, a panel of this Court concluded that the officer's interaction with the defendant did not constitute an "interception" within the meaning of the Wiretap Act because "Detective Morris, as 'Kelly15F' was the intended recipient of these communications." *Proetto*, 771 A.2d at 831.

hue, writing for a unanimous panel, repudiated the Commonwealth's theory and distinguished *Proetto* as follows:

> In that case, armed with the aforementioned information obtained from the minor, a detective posing as a 15–year old girl entered the chat room to make contact with the defendant. However, the detective did not use the same contact information as the minor complainant. The detective created a wholly separate computer profile and initiated contact with the defendant. Our Court found that the detective was a direct party to the communication with the defendant, there was no eavesdropping or wiretapping, and the Wiretap Act was not intended to prevent misrepresentation of identity. [*Proetto,*] [771 A.2d] at 832. As such, our Court found that these communications were not intercepted under the Wiretap Act. Such was not the case in this matter. Here, Officer Houk posed as Amodeo. *Therefore, Amodeo was the intended recipient of the communications, not Officer Houk.* As such, *Proetto* is inapplicable.

*Cruttenden,* 976 A.2d at 1181 (emphasis added).

We find the facts in this case wholly analogous to those in *Cruttenden* and similarly distinguishable from those in *Proetto.* As in *Cruttenden,* the investigating officer in this case, Detective Saul, obtained the cell phones of two of the defendants' confederates and posed as those two individuals, conversing with them as if he were the intended recipient of their calls. Further, like the officer in *Cruttenden,* Detective Saul agreed to the drug sales for which the defendants had called as if he had been the calls' intended recipient. The detective's attempted sleight of hand in this regard renders *Cruttenden* controlling and distinguishes *Proetto.* In *Proetto,* unlike here, the investigating officer established an identity in the internet chat room the defendant frequented and never used another alias, although he could have done so as a practical matter and taken advantage of the anonymity of the internet and of the rapport the victim and the defendant ostensibly established. The fact that he did not do so makes the scenario in *Proetto* fundamentally different from that in the case at bar, where Detective Saul actively portrayed himself as someone with whom the defendants were familiar and availed himself of the defendants' inability to discern his true identity over the telephone. Because Detective Saul was not the intended recipient of the calls, unlike the scenario in *Proetto,* that case cannot be deemed controlling. As he was someone other than the intended recipient, his participation in the calls constituted an interception within the meaning of the Wiretap Act, and was therefore subject to the panoply of limitations that statute imposes. The detective was therefore required to obtain the callers' consent or a court order authorizing an interception. Because he had obtained neither, his conduct was unlawful and all evidence obtained thereby subject to suppression. The respective trial courts did not err in so finding.

For the foregoing reasons, we affirm the trial court's orders suppressing all evidence obtained as a result of Detective Saul's interception of the phone calls in question.

Orders **AFFIRMED.**