## Commonwealth v. Boyd

C.P. of Lycoming County, No. CR-1467-2013

*Kenneth Osokow*, for Commonwealth.
*William J. Miele*, for defendant.

LOVECCHIO, *J.*, June 27, 2014—

## OPINION AND ORDER

Before the court is defendant's omnibus pretrial motion

filed on February 28, 2014. By information filed on September 27, 2013, defendant is charged with criminal homicide and related charges. It is alleged that on July 20, 2013, defendant shot and killed Ansari Wilson.

Defendant's omnibus pretrial motion consists of a motion to suppress defendant's first statements, a motion to suppress contents of defendant's phone call with his mother, a motion to sever and a motion for formal discovery.

A hearing and argument were held before the court on May 6, 2014. Prior to testimony being taken, defendant withdrew his motion to suppress defendant's first statement, the Commonwealth agreed to the severance and the motion for formal discovery was deemed moot. The court entered an appropriate order on the record.

Accordingly, the hearing and argument only addressed defendant's motion to suppress contents of defendant's phone call. More specifically, while in police custody on July 22, 2013, defendant was interviewed by law enforcement officers. This interview was video and audio taped. Following the questioning, defendant was permitted to call his mother. Defendant actually spoke to his mother and for a very brief time with his father during the call. Defendant seeks to suppress all of the mother's communications on the phone to the extent that said communications can be heard, as well as all of defendant's communications to his mother and father while the police officers were out of the room.

Prior to testimony being taken, the parties stipulated to certain facts. First, the parties stipulated that if Agent Kontz of the Williamsport Bureau of Police was called to testify, he would testify that the entire interview with

the defendant on July 22, 2013 was "taped" and that prior to going into the interview room, defendant was advised that "his statements would be recorded." Second, the parties stipulated that outside of the interview room on the door leading into the room, there was a sign that "in essence" said that one is subject to being recorded or monitored in the room. Finally, the parties stipulated that Commonwealth Exhibit 1 was the disc that contained the audio and video recording of the defendant's interview with police on July 22, 2013.

The disc was played in court. As well, the court thoroughly reviewed the disc. Defendant is seated in the corner of a room with the door shut, being interviewed initially by two law enforcement officers, including Agent Kontz. Agent Kontz tells defendant that he is going to let him call his mom while Agent Kontz would look for a cigarette for him. Agent Kontz takes his paperwork, puts it together and then puts it in a folder or large envelope. While Agent Kontz is doing this, Agent Sorage enters the room and continues to ask questions, first while standing, and next after taking a chair and moving it close to defendant.

Both officers have defendant "cornered" while asking questions. The questioning apparently ends and Agent Sorage says "have we treated you fair, have we been good to you" to which defendant answers "yeah." Agent Sorage then says "one other stupid question." He asks about defendant's street name "Mug." Based on defendant's answer, the law enforcement officials start laughing. Agent Sorage then shakes defendant's hand. Agent Kontz tells the defendant he's going to get him his cigarette and let him call his mom and then says "we'll get our stuff together and figure out what's up next." Agent Kontz

hands defendant a cell phone and then shakes defendant's hand as well. Both Agent Sorage and Agent Kontz leave the room and close the door. The interview up to that point lasted 34 minutes and 50 seconds.

Defendant takes the phone and calls his mother apparently at two different numbers. He finally gets through approximately a minute later. During the conversation, defendant makes certain alleged admissions to his mother, talks in detail about the accusations against him, his apprehension and the charges. He talks about what evidence they have against him. He specifically tells his mom "you can talk, no we can talk." He indicates what the witnesses are apparently "saying." The conversation becomes emotional with defendant starting to cry and telling his mother "there's nothing to do, I did this to myself." Defendant further notes that "I'm going, 'cause I don't want to hurt you mom.'" Defendant then speaks to his father saying "I'm booked, they got me."

At approximately 39 minutes and 54 seconds, after about five minutes of defendant talking on the phone with his mother and very shortly with his father, Agent Kontz steps back into the room, leaving the door open. He specifically asks defendant if he wants Agent Kontz to talk to defendant's parents to tell them what's going on because he's "got to wrap this up." Defendant speaks briefly with his mother and then gives the phone to Agent Kontz. Agent Kontz stops the recording.

Defendant asserts that his conversations with his parents while the police were not present should be suppressed as well as the conversations that his mother and father had with him. Defendant asserts that suppression is appropriate under Pennsylvania's Wire

Tapping and Electronic Surveillance Control Act, 18 Pa. C.S.A. § 5701 et. seq. More specifically, defendant argues that both he and his parents are aggrieved persons under the act and that their conversations with each other were illegally intercepted.

The parties do not dispute that under the act law enforcement officials may not intercept, or in this case simultaneously record, a private telephone conversation. 18 Pa. C.S.A. §§ 5703, 5704; *see also Commonwealth v. Deck*, 954 A.2d 603 (Pa. Super. 2008), *appeal denied*, 600 Pa. 738, 964 A.2d 1 (2009). The parties dispute, however, the applicability of the act. Defendant argues that both he and his parents are aggrieved persons and thus entitled to the protections of the act, while the Commonwealth contends that none of the individuals are aggrieved parties or defendant did not have a reasonable expectation that his communications with his parents would remain private.

In accordance with the act, any aggrieved person who is a party to any proceeding in any court may move to exclude the contents of any wire, electronic or oral communication 18 Pa. C.S.A. § 5721.1(b). Pursuant to the act, an "aggrieved person" is a "person who was a party to any intercepted wire, electronic or oral communication or a person against whom the interception was directed." 18 Pa. C.S.A. § 5702. An "oral communication" is any "oral communication uttered by a person possessing an expectation that such communication is not subject to any interception under circumstances justifying such expectation." 18 Pa. C.S. §5702.

In determining what constitutes an "oral communication" under the act, "the proper inquiries are whether the speaker

had a specific expectation that the contents of the discussion would not be intercepted and whether that expectation was justifiable under the existing circumstances." *Agnew v. Dupler*, 553 Pa. 33, 717 A.2d 519, 523 (1998).

Defendant argues that he communicated with his mother and father and that they communicated with him under such circumstances that they possessed an expectation that their communications were not being recorded. Therefore, defendant argues that they are aggrieved persons.

The Commonwealth bears the burden to prove by a preponderance of the evidence that defendant and his parents are not aggrieved persons, they did not have a justifiable expectation that their communications would not be subject to interception or the interception falls within one of the exceptions set forth in Section 5704. *See* 18 Pa. C.S.A. § 5721.1 (c) (4).

While defendant knew and consented to his interview with the police officers being recorded, there is little, if any, evidence to prove that he consented to the conversation he had with his parents being recorded. Prior to the interview, defendant was advised that his statements would be recorded. The clear implication of this is that his statements to the police would be recorded. The sign on the outside of the room was vague at best and there is no evidence to indicate that defendant read it or was aware of it.[1] Defendant's parents were not even in Williamsport.

---

1. The video that the Commonwealth submitted as an exhibit does not depict defendant entering the room or the sign on the door. It does, however, show that defendant is handcuffed, the handcuffs are attached to a chain around defendant's waist, and the door swings inward when the officers enter the room. The handcuffs are removed so defendant can sign a form to waive his *Miranda* rights. If anything, these facts would support an inference that the police opened the door for defendant to enter the room, at which point the officer's body likely would have ob-

Obviously, they would not have any knowledge about the sign on the interview room door.

Clearly, prior to defendant speaking with his parents, the interview had ended. Agent Kontz told defendant they were going to allow him to call his mother. Both agents shook defendant's hand and Agent Kontz specifically said that the officers were going to "get [their] stuff together and figure out what's up next." Agent Kontz handed defendant a cellular phone. Both officers then left the room and closed the door, giving the defendant the impression that he was in private. Moreover, the content of the conversation between defendant and his parents exhibited defendant's lack of consent to it being recorded. He made admissions, talked in detail about his apprehension, the accusations against him and the charges. He spoke of the evidence against him and clearly told his mother at the beginning that they could talk. The conversation became emotional and defendant spoke in terms with his mother that evidenced a lack of consent. Finally, the entire conversation except for the last portion was not interrupted. The police gave defendant five-plus minutes for the conversation. Under these circumstances, the court cannot conclude that the Commonwealth established that defendant and his parents lacked a justifiable expectation that their communications would not be subject to interception.

Curiously, during the argument in this matter, the parties analyzed the conversations between defendant and his parents as "oral communications." Because, however, the conversation took place on a cellular telephone, it is more properly characterized as "an electronic or wire communication," thus eliminating the

structed any sign on the door.

requirement in connection with oral communications that the "speaker demonstrate a privacy expectation." *Commonwealth v. Rosa*, 21 A.3d 1264, 1269 (Pa. Super. 2011), *reversed on other grounds*, 64 A.3d 627 (Pa. 2013); *see also Commonwealth v. Deck*, 954 A.2d 603 (Pa. Super. 2008), *appeal denied*, 600 Pa. 738, 964 A.2d 1 (2009).[2] Defendant and his parents clearly meet the definition of an aggrieved party for an electronic or wire communication because they were parties to the cellular telephone conversation.

It is undisputed that the law enforcement officials did not obtain court approval, the approval of the district attorney or the consent of all the parties prior to recording defendant's telephone conversation with his parents. Therefore, regardless of whether defendant's cellular telephone conversation with his parents was an electronic, wire or oral communication, it was recorded in violation of the act and its contents must be suppressed.

Accordingly, the following order is entered.

ORDER

And now, this day of June 2014, following a hearing and argument, defendant's motion to suppress is granted. The Commonwealth is precluded from utilizing against defendant at trial any of defendant's conversation with his parents or his parent's conversation with him during the telephone call following defendant's interview with police on July 22, 2013.

---

2. After the decision in *Deck*, the Legislature amended the statute to include an exception for victims to intercept communications when they have reasonable suspicion that the intercepted party is committing, about to commit or has committed a crime of violence and there is reason to believe that evidence of the crime of violence may be obtained from the interception. 18 Pa.C.S. §5704(17).